## TAYLOR, ADMINISTRATOR, *v.* FICKAS.

WATERCOURSE.—*Obstruction of.—Action by Administrator for Damages.—Pleading.—Heir.*—In an action by one styling himself administrator of the estate of a deceased land-owner, against an adjoining proprietor, for obstructing the passage of drift-wood theretofore carried across the lands of both by the overflow of an adjacent river during freshets, the complaint averred, that the plaintiff, by inheritance from the decedent, was the sole owner of the lands injured by such obstruction.

*Held,* on demurrer, that such action can not be maintained by the plaintiff as administrator, but that the averments of the complaint show a right of action in him personally.

SAME.—*Rights of Administrator in Lands of His Decedent.*—In this State, an administrator has no rights, as such, in the lands of his decedent. except

to subject the same to the payment of debts, if necessary, or in the absence of heirs or devisees.

SAME.—*Riparian Proprietor.— Property of, in Watercourse.*— A riparian proprietor has a mere usufruct property in water flowing over his lands in its regular channel.

SAME.—*Subterranean Water.—Surface-Water.—Overflow During Freshet.*— Water which percolates through the soil. beneath the surface, without a known channel, water which temporarily flows upon or over the surface, from the falling of rains and the melting of snows, without a channel, but simply as the natural or artificial elevations and depressions may guide it, and water temporarily flowing from a watercourse, over adjacent lands, without a channel, on the overflow of such watercourse by reason of freshets, forms part of the realty and belongs to the owner thereof.

SAME.—*Obstructing Overflow Carrying Drift-Wood.*—The proprietor of certain lands sued an adjoining proprietor for obstructing the passage of drift-wood carried by the overflow of an adjacent watercourse during freshets, by planting a row of trees upon the land of the defendant, and along the line dividing their lands, by means of which the drift-wood was lodged upon the lands of the plaintiff. *Held,* that no action lies for such obstruction.

From the Vanderburgh Circuit Court.

*A. L. Robinson,* for appellant.

*J. M. Shackelford* and *R. D. Richardson,* for appellee.

BIDDLE, J.—The appellant entitled this case, " Samuel C. Taylor, administrator of the estate of Martha E. Taylor, deceased," etc., and filed the following complaint :

" Samuel C. Taylor, administrator aforesaid, complains of John H. Fickas, and says, that on the 11th day of December, 1866, the said Martha E. Taylor, whose name was then Martha E. James, became the owner in fee-simple, and entered into possession, of the following described tract of land, viz. : forty-five and ninety-one one-hundreths acres, out of the middle of the north-east quarter of section No. eleven (11), in township No. seven (7) south, range No. ten (10) west, being that part of said quarter section set off and allotted to Mrs. Emily R. James, as widow of Nathaniel J. James, in a suit for partition in the court of common pleas of said county, during the November term,

1859, as appears by the report of commissioners in said suit, and the plat filed with the said report, all of which is recorded in partition record No. 1, on page No. 108, to which the plaintiff refers for a more perfect description of said land, situated in said county; and that the said Martha E. continued to own and possess the said land, until the 7th day of December, 1874, when she departed this life intestate, leaving the said plaintiff her husband and sole heir of her said estate, and afterwards, to wit, on the 11th day of April, 1877, the plaintiff was in due form appointed administrator of the estate of the said decedent.

" The plaintiff further avers, that, during the year 1862, the defendant became the owner and entered into possession of the following described tract of land, viz.: Fifty-nine acres off of the west side of the said north-east quarter of said section eleven (11), lying west of and adjoining the said land of decedent; that said tracts of land lie in strips, each half a mile in length, running north and south, and are situated near the Ohio river, in said county, and are a part of the overflowed bottom lands near and adjacent to said river, and that, from time immemorial, a large extent of country in the vicinity of said tracts of land, and including the same, has been and still is liable to be overflowed with water from the said river, after and during excessive rains in the valley of the said river; that, during said times of high-water and overflow, the water from the said river runs over the said tracts of land with a strong and rapid current, the general current of the same running from east to west, first over the land of decedent, and then over that of the defendant; the water in said current over said land varying in depth from two feet to ten feet, and that the water (which is in fact a portion of the said river) has run in that manner during seasons of high-water and during times of overflow, from time immemorial, and that the same would have continued so

to run but for the wrongful acts of the defendant hereinafter described.

" The plaintiff further avers, that, during all the times of high-water and overflow of said river, great quantities of drift-wood have floated in the said current, over the said tracts of land, without injury to the same, and would have continued so to float but for the wrongful acts of the defendant hereinafter described.

" The said tracts of land during the years hereinafter named were cleared and in cultivation, and of great value, to wit, of the value of one hundred dollars per acre; that the defendant, to protect his said tract of land from drift-wood, in the year 1864, wrongfully and unlawfully planted, and has since continued and maintained, a row of trees on his said land, on or near and within a few inches of the line dividing said tracts of land, in a continuous row or line, running north and south for a distance of half a mile, the said trees being planted only two feet apart, along the whole length of the line dividing said tracts of land.

" That, at the time when the decedent purchased and entered into the possession of the tract of land first above described, the said trees were of small size, having recently been planted, and were not of sufficient size to form the obstruction of said current, as hereinafter described; that during eight years, to wit, from the year 1867 to the year 1874, both included, the said trees, so wrongfully and unlawfully planted and maintained by the defendant, having grown to a sufficient size and strength, prevented the drift-wood floating in the said current during times of high-water and overflow in said river from flowing over and away from the land of decedent and from the land of the defendant. And during all those years the drift-wood which would have floated over and away from said decedent's land, and from the defendant's land, lodged upon

and against the said trees, and upon said decedent's land, in large quantities, so that a dam has been and was formed against said trees, and upon decedent's lands, by means whereof a large area of said land, to wit, five acres, became covered with trees, logs, stumps, brush and trash, which floated and lodged there during said years in times of high-water and overflow, and covered the said ·five acres with said drift-wood and trash, to the depth of from two feet to ten feet, and which so remained covered at the time of the decease of the said Martha E., by reason whereof the said land became and was worthless and of no value.

"And the plaintiff further avers, that, by the obstruction aforesaid, the water was prevented from flowing off of said land of decedent, and remained stagnant, and the decaying wood and trash, so piled upon the said land by the means aforesaid, rendered the same unhealthy and unfit for a·human habitation.

" By means whereof the plaintiff avers, that the said decedent sustained damages to the amount of two thousand dollars, for which he demands judgment, and for all other proper relief."

The appellee filed a demurrer to the complaint, for that it does not state facts sufficient to constitute a cause of action.

The demurrer was sustained, the parties stood by their pleadings, and the court rendered final judgment for the appellee.

If this complaint was brought solely in the right of an administrator, the action would not lie. An administrator can not sue for an injury to the freehold. *Emerson* v. *Emerson*, 1 Vent. 187 ; Toller Executors, 159 ; *Hill* v. *Penny*, 17 Maine, 409. By the common law, lands went to the heir, not to the administrator. 2 Bl. Com. 201. In the State of Indiana, the administrator has no right in the

lands that descended to the heir, except upon the contingency that the personal estate is insufficient to pay the debts against the deceased, or in the absence of heirs or devisees. 2 R. S. 1876, pp. 519, 535, secs. 75, 110. And this is the general American doctrine. The appellant can not maintain the case as an administrator; but, in the body of the complaint he avers that he is the sole heir of the decedent, and that the lands alleged to have been injured have descended to him. As an heir, he may bring the action.

The property in water that passes along and through a watercourse which has a bed, channel and banks, where it usually flows, is a mere usufruct interest, continuing only while the water is passing over the lands of the owner. He has the right to receive it where the watercourse, in its natural channel, enters his land, and to use it while it is passing over his lands; but he is required to return it to its channel when it leaves his land. 2 Bouvier Law Dictionary, p. 656; Angell Watercourses, secs. 94, 135. The property in the lost water that percolates the soil below the surface of the earth, in hidden recesses, without a known channel or course, and property in the wild water that lies upon the surface of the earth, or temporarily flows over it as the natural or artificial elevations or depressions may guide or invite it, but without a channel, and which may be caused by the falling of rain or the melting of snow and ice, or the rising of contiguous streams or rivers, fall within the maxim that a man's land extends to the centre of the earth below the surface, and to the skies above, and are absolute in the owner of the land, as being a part of the land itself. Angell Watercourses, sec. 108, and notes and authorities there cited. See, also, *The New Albany and Salem R. R. Co.* v. *Peterson*, 14 Ind. 112, and *The City of Greencastle* v. *Hazelett*, 23 Ind. 186.

In the complaint before us, there is no averment of any watercourse, except, indeed, by way of parenthesis, that

the place, during floods, is a part of the Ohio river; but the facts averred clearly show that it is not upon the bed of the river, nor within its channel, nor between its banks; in short, that it is no part of a watercourse, but that the flow is over the entire surface of the land, is occasioned by temporary causes, and is not usually there. The rights of the appellee, therefore, are such as a proprietor may have in surface water, which, as we have seen, is a part of his land; and the injuries or inconveniences which the appellant is alleged to have suffered are such as arise from the changes, accidents and vicissitudes of natural causes. These rights and liabilities are so well defined by BIGELOW, C. J., in the case of *Gannon* v. *Hargadon*, 10 Allen, 106, that we adopt the definition as our own:

" The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owner that an alteration in the mode of its improvement or occupation in any portion of it will cause water, which may accumulate thereon by rains and snows falling on its surface, or flowing onto it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into or over the same in greater quantities or in other directions than they were accustomed to flow."

Again, from the same cause:

" The obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil."

In delivering the opinion, in the case of *Goodale* v. *Tuttle*, 29 N. Y. 459, DENIO, C. J., said:

"And in respect to the running off of surface water caused by rain or snow, I know of no principle which will prevent the owner of land from filling up the wet and marshy places on his own soil for its amelioration and his own advantage, because his neighbor's land is so situated as to be incommoded by it. Such a doctrine would militate against the well settled rule that the owner of land has full dominion over the whole space above and below the surface."

The maxim, that every one must so enjoy his property as not to injure the property of another, so earnestly insisted upon by the appellee, means no more than that every one must so enjoy his property according to his legal right, as not to injure the legal right in the property of another. It is sometimes impossible for the owner to use his property within his legal right, without, in some slight degree at least, injuring the property of another. Such a case is not within the maxim, provided it does not injure a legal right in the property of another.

We adopt the following language from a case cited herein: "The elements being for general and public use, and the benefit appropriated to individuals by occupancy, this occupancy must be regulated and guarded with a view to individual rights of all who have an interest in their enjoyment; and the maxim, *Sic utere tuo, ut alienum non lædas*, must be taken and construed with an eye to the natural rights of all; and, although some conflict may be produced in such uses and enjoyments, it is not considered, in judgment of law, an infringement of the right."

In the case of *Chatfield* v. *Wilson*, 28 Vt. 49, it is said: "The maxim, *Sic utere tuo, ut alienum non lædas* applies only to cases where the act complained of violates some legal right of the party; * * * and it may be laid down as a position not to be controverted, that an act legal in it-

self, violating no right, can not be made actionable on the ground of the motive which induced it."

The case which seems most nearly to support the views of the appellant is *Gillham* v. *The Madison, etc., R. R. Co.,* 49 Ill. 484.

The question in that case, as in this, arose upon sustaining a demurrer to the complaint. The facts in that case were as follows: The appellant was the owner of a tract of land less elevated than the land in the neighborhood, from which all the water that fell upon it from rains or otherwise flowed on the land, and which, by means of a depression in the surface, ran off his land to adjoining lands, and thence into a natural lake. The appellee made a large embankment on the line of the appellant's land, entirely filling this channel, thereby throwing the backwater on the appellant's land.

In this case the complaint was for obstructing a depression in the ground, or a channel, not for obstructing the entire surface for a half mile, where no channel is alleged, as in the case before us.

The true doctrine in such a case, we believe, was expressed by the CHANCELLOR, in the case of *Earl* v. *De Hart*, 1 Beasley, 280: "If the face of the country is such as necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse."

It is plain that the facts averred in the complaint we are considering do not fill the law as expressed above.

The doctrine contended for by the appellant, applied to the vast alluvial regions—so generally level, and subject

to occasional inundations—bordering upon the Ohio river, and lying along other rivers and large streams within this State, would very much embarrass agriculture and general improvement, by preventing proprietors of lands from securing their fences by planting trees, or by other permanent methods, and in some instances, perhaps, render large portions of our richest soil useless. While the owners of lands may not obstruct watercourses to the injury of others, they must be permitted to fence and cultivate their fields and improve their lands in the way which best subserves their interests, without being responsible for the accidents of floods, or the shiftings of surface water occasioned thereby, although sometimes slight and temporary injuries may result therefrom to adjoining owners. These are accidents which must be borne alike by all.

We think the law has thus wisely discriminated between the rules which apply to watercourses, and those which apply to surface waters. The following authorities, in addition to those cited above, support this opinion: *Shields* v. *Arndt,* 3 Green Ch. 234; *Chasemore* v. *Richards,* 2 H. & N. 168; S. C., 5 H. & N. 982; *The City of Bangor* v. *Lansil,* 51 Maine, 521; *Greeley* v. *The Maine Central R. R. Co.,* 53 Maine, 200; *Kauffman* v. *Griesemer,* 26 Pa. State, 407; *Bates* v. *Smith,* 100 Mass. 181; *Emery* v. *City of Lowell,* 104 Mass. 13; *Luther* v. *The Winnisimmet Co.,* 9 Cush. 171; *Ashley* v. *Wolcott,* 11 Cush. 192; *Parks* v. *City of Newburyport,* 10 Gray, 28; *Flagg* v. *City of Worcester,* 13 Gray, 601; *Dickinson* v. *City of Worcester,* 7 Allen, 19; *Wheeler* v. *City of Worcester,* 10 Allen, 591; *Goodale* v. *Tuttle,* 29 N. Y. 459; *Wagner* v. *Long Island R. R. Co.,* 5 N. Y. (Thompson & Cook) 163; *Buffum* v. *Harris,* 5 R. I. 243; *Beard* v. *Murphy,* 37 Vt. 99; *Swett* v. *Cutts,* 50 N. H. 439; *The Conhocton Stone Road Co.* v. *The Buffalo, New York and Erie R. R. Co.,* 3 Hun, 523; *Chasemore* v. *Richards,* 7 H. L. Cas. 349; *Bowlsby* v. *Speer,*

31 N. J. 351; *Rawstron* v. *Taylor*, 11 Exch. 369; *Hoyt* v. *The City of Hudson*, 27 Wis. 656; *Barnes* v. *Sabron*, 10 Nev. 217; *Imler* v. *City of Springfield*, 55 Mo. 119; *Jones* v. *Hannovan*, 55 Mo. 462.

The court did not err in sustaining the demurrer to the complaint.

The judgment is affirmed, at the costs of the appellant.

Petition for a rehearing overruled.