Woods, J.
— This suit was commenced in the Knox circuit court, and the venue changed to Daviess county, where a trial was had, resulting in a judgment for the plaintiff below, from which the defendant pToseoutes this appeal.
The complaint contains but one paragraph, and alleges-that the plaintiff, on the 1st day of January, 1872, was, and ever since has been, the owner of certain lands therein-described, situated in the lower prairie below Vincennes,. *279 containing about two hundred acres. After the description of the lands, the complaint proceeds in the following words :
‘ ‘And the plaintiff further avers that the defendant,, in the year 1872, built and constructed a large embankment of earth and stone and gravel, ten feet high and one hundred feet wide, over and across the southern portion of the said land hereinbefore described, and that said embankment extended from the north line of said land, southwardly across said land and for a distance of ten miles south of the south line of said land, and the plaintiff says that the natural flow and drainage of the said land was over and across the land upon which the said embankment is now constructed, and also over and across the land lying immediately south of the land herein, described, and from thence across and over the land now occupied by said part of said embankment south of the land hereinbefore described; and the plaintiff says that the defendant carelessly, negligently and unskilfully built and constructed said embankment, and failed negligently and carelessly, in the construction of said embankment, to make any culvert, bridge or drain, in, through or under said embankment, whereby the water coming on the land hereinbefore described could escape, and the plaintiff says that within five years last past, the water falling upon the said real estate of the plaintiff, and the water flowing thereon from the river, and from the surrounding land, has been stopped and hindered by said embankment from flowing off of said land, and during the month of August, 1875, the water being so stopped and hindered arose to the depth of eight feet upon said land, and entirely destroyed one hundred aci’es of growing corn, and carried away a thousand panels of fence that enclosed said land, and that, since the time of the construction of said embankment, the water has continually overflowed the said land, so that the same has become almost entirely worthless, and the plaintiff says that the said embankment was and is *280 the only cause of the water so overflowing the plaintiff’s land. Wherefore the plaintiff demands judgment,” etc.
The complaint, proceeds on the theory that the defendant was lawfully in possession of its right of way across the land described and for the distance of ten miles southward, but whether lay condemnation or by purchase is left to conjecture. The defendant was therefore guilty of no trespass in entering upon its said right of way, and in making all proper and necessary excavations and embankments for the construction of its road-bed. The gist of the complaint is in the averments that the defendant “failed negligently and carelessly, in the construction of said embankment, to make any culvert, bridge or drain, in, through or under said embankment, whereby the water coming on the land hei’einbefore described could escape, and that within five years last past the water falling upon said real estate of the plaintiff, and the water flowing thereon from the river, and from the surrounding land, has been stopped and hindered by said embankment from flowing off,” etc. No attempt'is made to charge an interference with any natural watercourse, but only with the flow of surface water and waters overflowing from the river and spreading over the adjacent bottom or low lands. The question presented is, therefore, whether the defendant, having acquired a right of way for the construction of its railroad, and having found it necessary or expedient to raise its track above the natural surface of the land, owed any duty to the plaintiff to provide culverts or other means of passage through its embankment, for the surface water or water overflowing from the river and descending in that direction from or over the lands of the plaintiff. If upon the facts of the complaint such duty existed, a careless and negligent breach thereof, together with actionable damages, is shown, and the complaint is good. If such duty did not exist, the complaint is not good.
' Washburn, in his work on Easements and Servitudes, pp. *281 353 and 355, supporting himself mainly by references to writers on the civil law, says : “It may be stated as a general principle, that, by the civil law, where the situation of two adjoining fields is such that the water falling or collected by melting snows, and the like,upon one, naturally descends on the •other, it must be suffered by the lower one to be discharged «upon his land, if desired by the owner of the upper field.
“The owner of the upper field, in such case, has a natural •easement, as it is called, to have the water that falls upon his own land flow off the same upon the field below, which is charged with a corresponding servitude, in the nature of •dominant and servient tenements.”
This is doubtless the rule of the civil law, and has been adopted by the courts of last resort in some of the States of the Union, but it is not the common-law doctrine, and is not generally prevalent in this country.
Dillon, in his work on Municipal Corporations, speaking of the surface water, says : “This the law very largely regards fas Lord Tente roen phrases it) as a common enemy, which every proprietor may fight or get rid of as best he may. * * * On the one hand, the owner of the property'" may take suck measures as ke deems expedient to keep surface water off from him or turn it away from his premises on to the street; and, on the other hand, the municipal authorities may exercise their powers in respect to the graduation, improvement, and repair of streets, without being liable for the consequential damages caused by surface water to adjacent property.” Section 798, and notes. To the same effect are Angelí Watercourses, sec. 108 : 1 Addison Torts, 105; Cooley Torts, 574; Hillard Torts, 584; Taylor v. Fickas, 64 Ind. 167, and cases cited; Schlichter v. Phillipy, 67 Ind. 201.
The case of Taylor v. Fickas, supra, is fully in point, ■and must be regarded as having settled the doctrine for ■ this State on the subject. The facts of the case, in brief, *282 were, that the owner of the lower land had planted, near the upper line of his land, a row of trees for the purpose of keeping back the driftwood, which was accustomed to be carried on and over his land by the overflow of the Ohio river. The result, which must have been anticipated, and Avas, therefore, presumably intended, was, that the driftwood, lodging against this toav of trees, accumulated on the adjacent land above, and either destroyed or greatly depreciated the value thereof. It Avas held, however, that no action lay for the obstruction, and citing many of the American, and some of the English, cases on the subject, it was declared that Avaters percolating the soil, or contained in hidden recesses, Avithout a knoAvn channel or course, surface waters, and waters overflowing from contiguous streams or rivers, “fall within the maxim that a man’s land extends to the center of the earth beloAv the surface, and to the skies above and, citing the case of Gannon v. Hargadon, 10 Allen, 106, the following statement of the Iuav was adopted as our own : “The right of an oAvnerof land to occupy and improve it in such manner and for such purposes as he may sec fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated Avith reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will' cause Avater, which may accumulate thereon by rains and snows falling on its surface or flowing on to it over the surface of adjacent lots, either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow. * * * The obstruction of surface water or' an alteration in the floAV of it affords no cause of action in-behalf of a person Avho may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil.”
*283 In the more recent ease of Templeton v. Voshloe, 72 Ind. 134, this court held, “that the owner of the upper field may not construct drains or excavations so as to form new channels on to the lower field, nor can he collect the water of' several channels and discharge it on the lower field so as to increase the wash upon the same. The right of the owner of the upper field to make drains on his own land is restricted to such as are required by good husbandry and the proper improvement of the surface of the ground, and as may be discharged into natural channels, without inflicting palpable and unnecessary injury on the lower field.”
The court, however, took pains to add that, “As to where- and under what circumstances, the owner of the lower field may obstruct or direct the flow of surface water which naturally descends upon his land, we need not inquire, as that question is in no way involved in the proper decision of this cause.”
It is difficult to invent a formula for the statement of a rule of law which will accurately express the rule in its application to varying circumstances ; and it may be that there is some verbal inconsistency in the formulas quoted from these opinions of this court, but when applied to the subject-matter of each there is no inconsistency of principle involved or expressed. The one has to do with the land-owner’s conduct in guarding his possession iigainst the encroachments-of surface and flood waters from without, and the other with the discharge of such waters from his own land on to that of another. With reasonably near approximation to accuracy, it may be laid down as a general rule, that upon the-boundaries of his own land, not interfering with any natural or prescriptive watercourse, the owner may erect such barriers as he may deem necessai’y to keep off surface water or overflowing floods coming from or across adjacent lands; and for any consequent repulsion, turning aside or heaping-up of these waters to the injury of other lands, he will not be *284 responsible ; but such waters as fall in rain and snow on his land, or come thereon by surface drainage from or over contiguous lands, he must keep within his boundaries, or permit them to flow off without artificial interference, unless within the limits of his land he can turn them into a natural watercourse. This is in accordance with the general principle, that such waters are a common enemy which each proprietor may fight off as he will; but, once on his land, they become his property (in a qualified sense, of course), and the maxim applies, ‘‘Sic utere tuo, ut alienum non laedas.” We hold, therefore, that the complaint fails to show an actionable injury.
Judgment reversed, with costs and with instructions to sustain the demurrer to the complaint.