No. 8862.

BENTHALL v. SEIFERT.

NUISANCE.—*Surface-Water.*—*Levees.*—A land-owner may, by levees or other appliances erected on his own premises, prevent the natural flow of surface-water upon the surface of his own lands from those above, and is not liable for injury resulting to the lands above by reason of the consequent accumulation of such water thereon.

From the Posey Circuit Court.

*E. M. Spencer* and *W. P. Edson*, for appellant.
*A. P. Hovey* and *G. V. Menzies*, for appellee.

NEWCOMB, C.—The nature and purpose of this action are stated as follows in the brief of counsel for the appellee:

"This action was brought for a private nuisance caused by the erection of a levee or embankment which stopped the natural flow of surface or rain water over the lands of the parties. The complaint, after describing the lands of the parties to the record, continues: Said plaintiff further says that over the said lands of the plaintiff and defendant, and for several miles to the north and south thereof, there is, and has been time whereof the memory of man runneth not to the contrary, a low depression or channel or natural drain or watercourse over said lands, for an immense quantity of rain water running in a southwardly direction, etc.; that on the 20th day of February, 1878, the defendant constructed, and caused to be built, south of and near the line of the plaintiff's land, a levee or embankment about two hundred yards long, and about three feet high, across the said natural drain, branch or watercourse, and entirely cut off the flow of water in its old and natural course over said land, and caused the water to back upon and flood a large part of said plaintiff's fields and woodlands, etc., and after heavy rains said lands are perfectly flooded with back-water caused by the erection of said levee or embankment, etc.; that plaintiff's lands, which are of great value, will be worthless

or of little or no value, if said embankment or levee is permitted to remain. Prayer that said embankment as a nuisance may be abated and destroyed, and for other relief, etc.''

A demurrer to the complaint was overruled. An answer in denial was then filed, and the cause was submitted to the court for trial; finding for the plaintiff; motion of defendant for a new trial overruled; judgment for nominal damages, that the embankment so constructed by the defendant was a private nuisance to the plaintiff, that the defendant should abate the same within thirty days, or in default thereof the same should be abated by the sheriff at the costs of the defendant, and that the defendant be perpetually enjoined from rebuilding said embankment on said land so as to cause the water to back upon the lands of the plaintiff.

The court stated the facts found as in a special finding, but as no request appears in the record for a special finding of facts and conclusions of law, it has the force only of a general finding. We quote, however, the first paragraph of this finding, because it is in harmony with and correctly states the evidence as to the character of the water-flow which the defendant was charged with obstructing, viz.: ''That north, northwest and northeast, for a considerable distance from the premises mentioned in the complaint, and admitted to belong to the plaintiff and defendant, including a large quantity or number of acres of land, the water naturally flows, and for a period of time beyond the memory of persons now living has flowed, through and over the land in controversy, forming a water-shed, and that such water accumulates from surface alone.''

The evidence introduced by both parties was to the effect that, after such surface-water from the lands above entered upon the land of the plaintiff, its flow was divided by a slight elevation, commencing on the land of the defendant and extending north to about the center of the plaintiff's premises. The escape of such surface-water, on either side

of said elevation, was by natural depressions in the surface of the land, and not through any channel made by force of the water, nor was there any evidence that any water ever so passed south over the lands of the parties, except surface water, the product of rains or snow. It further appeared from the evidence, and on this point there was no conflict, that the natural flow of the surface-water had been accelerated by two ditches on the plaintiff's land, running north and south; that he had also, before the defendant's embankment was made, constructed a ditch on his south line, running east and west along the north side of a highway dividing the lands of the plaintiff and defendant, and connecting with a public ditch located on the east side of said lands, and that afterward the defendant dug a ditch on his land, south of said highway, to said public ditch, and constructed the embankment complained of with the material excavated from said ditch. It also appeared, that, when the plaintiff dug his east and west ditch, he deposited the earth taken therefrom upon said highway, and by thus raising the grade of the highway, forced the water upon the defendant's land, in a narrower body, through a low slough which extended across the highway.

The appellant claims that these artificial changes made in the natural flow of the surface-water entitled him to protect his land against it, even if he must have submitted to the servitude claimed, in case its natural flow had not been changed or accelerated. We do not deem it necessary to enter into a discussion of that question, as we think the defendant had a legal right, in either case, to protect his land from the flow of surface-water, coming from the premises of the plaintiff. The cases of *Taylor* v. *Fickas*, 64 Ind. 167, and *Schlichter* v. *Phillipy*, 67 Ind. 201, seem decisive on this point; but, if the question could be considered a debatable one, after those decisions, the law in this State was settled by the subsequent case of *The Cairo, etc., R. R. Co.* v.

*Stevens*, 73 Ind. 278. In that case, Woods, J., speaking for the court, said: "With reasonably near approximation to accuracy, it may be laid down as a general rule, that upon the boundaries of his own land, not interfering with any natural or prescriptive watercourse, the owner may erect such barriers as he may deem necessary to keep off surface-water or overflowing floods coming from or across adjacent lands; and for any consequent repulsion, turning aside or heaping up of these waters to the injury of other lands, he will not be responsible; but such waters as fall in rain and snow on his land, or come thereon by surface drainage from or over contiguous lands, he must keep within his boundaries, or permit them to flow off without artificial interference, unless within the limits of his land he can turn them into a natural watercourse. This is in accordance with the general principle that such waters are a common enemy which each proprietor may fight off as he will."

The appellee claims, however, that he was entitled to the judgment rendered by the circuit court, under article 33 of the code, which reads as follows:

"Sec. 628. Whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action.

"Sec. 629. Such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance.

"Sec. 630. Where a proper case is made, the nuisance may be enjoined or abated, and damages recovered therefor."

The above statutory definition of a nuisance does not differ essentially from that given by common-law writers. Blackstone, 3 Com., p. 216, defines a private nuisance to lands to be "anything done to the hurt or annoyance of the lands, tenements or hereditaments of another." Wood on Nui-

sances, p. 1, thus defines a nuisance: "In legal phraseology it is applied to that class.of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his own property, real or personal, or from his own improper, indecent or unlawful personal conduct, working an obstruction of or injury to a right of another or of the public, and producing such material annoyance, inconvenience, discomfort or hurt, that the law will presume a consequent damage." In sec. 9, p. 16, of the same work, the author says: "It may be said, then, that a nuisance is an obstruction of or injury to a right, working essential inconvenience, annoyance, discomfort, injury or damage, and that unless an act or thing is in violation of a right, however much inconvenience, annoyance, discomfort, injury or damage may result therefrom, the act or thing is not a nuisance, and the party injured thereby is remediless." See, also, sections 4, 5, 7, 8, and authorities there cited.

The same principle has been announced in the decisions of this court. In the *New Albany, etc., R. R. Co.* v. *Higman,* 18 Ind. 77, it was held that a railroad embankment could not be abated as a private nuisance, because it had been so constructed as to obstruct the natural sluices and channels which formerly carried off the flood-water that was wont to be thrown upon said lands. The ground of the decision was, that the work was constructed under authority of law, and performed in a careful and skilful manner. The court said: "We do not well see how there can be a legal nuisance; that is, built up in strict conformity with law, and yet obnoxious to the penalty of abatement by the law."

The doctrine, that a work lawfully and skilfully constructed and properly used can not be deemed a nuisance in a legal sense, although it may cause injury to other parties, was also asserted in the earlier cases of *Butler* v. *The State,* 6 Ind. 165, and *Depew* v. *The Board, etc.,* 5 Ind. 8.

As the law did not give the appellee the right of flowage of his surface-water over the land of the appellant, but the latter had the legal right to repel such water by a levee upon his own land, it follows that no right of the appellee was infringed by said act of the appellant, and that the appellee can not maintain an action for the abatement of the obstruction complained of.

The circuit court erred, therefore, in overruling the demurrer to the complaint, and in overruling the motion for a new trial, for which errors its judgment ought to be reversed.

. PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be and it is hereby reversed, at the costs of the appellee, and that said cause be remanded to the Posey Circuit Court for further proceedings in accordance with said opinion.