Shelbyville and Brandywine Turnpike Company *et al. v.* Green.

No. 11,477.

SHELBYVILLE AND BRANDYWINE TURNPIKE COMPANY ET
AL. *v.* GREEN.

NEW TRIAL.—*Special Findings.*—*Practice.*—Where the court finds the facts
specially with its conclusions of law; matters not in issue, or which, in
view of the facts found, are immaterial, need not be found, and the
omission to find them is not cause for a new trial.

WATERCOURSE. — *Levees.*—*Injunction.*—*Easement.*—One may, by levees on
his own land, protect it from overflow by floods, not, however, obstruct-
ing the channel of any stream; and for this purpose he may make his
levee over the way of a turnpike company having an easement upon his
land, not injuring the use of the way, and though his levee cause a
greater overflow of water upon the land of others, and upon the turn-
pike elsewhere, his levee will be protected by injunction.

From the Shelby Circuit Court.

*B. F. Love, A. Major* and *H. C. Morrison,* for appellants.
*T. B. Adams* and *L. T. Michener,* for appellee.

BICKNELL, C. C.—This was a complaint for an injunction
by the appellee against the appellants.

The complaint alleges that the turnpike of the defendants
passes through the plaintiff's land; that the plaintiff, on the
east line of his land, has built a levee to prevent overflow by
high water; that the levee and turnpike are united together
at the sides and on the top of the turnpike, but that the levee
does not in any way interfere with the public or corporate use
of the turnpike, or of the adjacent ground; that the defend-
ants are wrongfully entering on the levee and detaching it
from the turnpike by removing the earth from the levee for a
distance of ten feet, thereby exposing it to destruction, and
the plaintiff's land to overflow from Blue river; that the
levee, as it was built, will prevent such overflow from com-
ing on plaintiff's land, as it often did, to his great damage,
before said levee was built; that if said levee is detached from
said turnpike as aforesaid, great and irreparable damage will
be suffered by the plaintiff.

The defendants answered in three paragraphs, of which the

second was the general denial. The first and third paragraphs alleged, in substance, that the overflowings of Blue river had always gone over the plaintiff's land and returned into the river below; that the plaintiff's levee came upon the top of the turnpike and made it about three feet higher, making a sharp ridge there difficult for loaded teams, and that the effect of the levee was to flood the turnpike, making it impassable, whereby it obstructed the defendants' right of way, to their great damage; that the plaintiff built his levee after being notified by the defendants not to do it; that they had only removed from the top and sides of their road the dirt unlawfully placed there by the plaintiff, and that this was all they intended to do.

The defendants also filed a cross complaint, alleging, substantially, the same matters, and claiming $1,500 damages, and that the plaintiff be required to remove his levee from the said right of way, and take it down so that it will not injure the defendants' road.

The plaintiff replied denying the special defences, and he answered the cross complaint by a denial. The issues were tried by the court without a jury, and at the request of the parties the court made a special finding of the facts and stated the conclusions of law thereon.

The following are the special findings:

" 1. At the commencement of this suit the plaintiff was and still is the owner in fee simple and in possession of the real estate described in the complaint.

" 2. In 1862 and 1863 the Shelbyville and Brandywine Turnpike Company constructed a turnpike road from Shelbyville to Brandywine creek, in said county, which road was constructed through the lands of plaintiff, described in the complaint, and have been in the possession of said line of road since said time.

" 4. That said real estate is contiguous to a stream of water, known as Big Blue river, which flows along a portion of the east and south sides of plaintiff's land, which will

more fully appear by reference to a map attached hereto, and to be considered as a part of this finding, as follows, to wit:

" MAP A.

" 5. The greater portion of said real estate lies in the valley of said river, and is what is commonly known as bottom land, used by the plaintiff for general farming purposes, and has been so used for many years.

" 6. All that portion of said realty lying in said valley, at the time of building the levee hereinafter mentioned, has, and for a great many years prior thereto, and before and since the

building of said turnpike, had been subject to inundation and overflow by the waters of said river in time of freshets, when the waters of said river were above the banks of said river and flowed over the said turnpike road, and also spread over said realty and adjoining lands, washing and carrying therefrom fences and soil, and injuring and destroying crops growing thereon, to the great damage of the plaintiff and the turnpike company.

" 7. In the summer and fall of 1881 and 1882, the plaintiff constructed and now maintains an earthen levee or embankment on the east side of said real estate, but within the boundaries thereof, for the purpose of protecting his said crops and realty from the washing of the high waters, incident to the overflow of the high waters and freshets from said river, which will be learned and its relation to said land will more fully appear by reference to the map herewith.

" 8. The plaintiff built and constructed said levee against and upon the embankment and road-bed of said turnpike, where it crosses the east line of said lands of plaintiff, so that the levee and turnpike are united together at the sides and on the top of the turnpike, but said levee or embankment does not interfere with or render inconvenient the public or corporate use of and enjoyment of said turnpike road, or the adjacent ground.

" 9. At the commencement of this suit Christopher Houston, Samuel D. Day and Allen Thomas were directors of said turnpike road, and said Houston was acting in the capacity of superintendent of said road.

" 10. At the commencement of this suit, the said turnpike company, through its superintendent, Houston, and his employees, had entered upon said levee, and were detaching it from said turnpike, by removing the earth composing the said levee from the top of the said turnpike where the levee crosses it as aforesaid, and were removing the earth and destroying the said levee thereon, and thereby exposing the said levee to destruction, and said real estate to washing and overflow by

high waters from said river, and the defendants were threatening to and will cut said levee from the embankment of the turnpike and virtually destroy the same, unless enjoined.

"11. That said levy, if not detached from said turnpike, and if permitted to remain as it was built, will prevent the high waters of said river from overflowing and washing said real estate to a large extent, and will thereby prevent much damage to said lands and to the plaintiff.

"12. That, previous to the construction of said levee, there was and still is a depression washed out across the lands of plaintiff, commencing a few rods from the river bank, at the bend of the river where the same turns in a southerly direction, and when there was a rise in said river the water passed over said lands of plaintiff.

"13. That, in the construction of said turnpike, the said company took possession of and occupied the right of way occupied by the said road-bed and embankment, with the consent of plaintiff's grantors, and have continuously occupied the same since he became the owner of said lands with his consent.

"14. That the said company, in the construction of their road, did not, and since that time have not constructed any ditches or drains through the land of the plaintiff.

"15. The depth of the flow of the high water, east of plaintiff's levee and over said turnpike road, for the distance of one-fourth of a mile, has been and will be greater by reason of the erection of said levee than before; that this flow is east of plaintiff's lands, and where the turnpike road is located on the lands of William A. Moore, from whence it flows back over the lands of plaintiff and said turnpike west of said levee, and by reason of checking the flow of the water over said depression and the lands of the plaintiff rendering the defendants' road more liable to be overflowed and damaged on the lands of said Moore east of the lands of plaintiff where the road-bed is not so high as said levee.

"16. The said levee does not obstruct any channel of said

river, nor is any part of said levee erected in or across any channel of said river in whole or in part.

" 17. Soon after the said turnpike was constructed through said lands, the then owners of said lands erected fences at the sides of said turnpike embankment, and said fences have since been maintained, and are now where they were originally erected.

" 18. Before the plaintiff constructed his said levee the defendants, the said turnpike company, notified him not to erect any part of his said levee on or over their right of way or road-bed.

" 19. The defendants Day and Thomas have done no act toward the removal of the plaintiff's levee except while sitting as members of the board of directors, and acting for said company, in officially entering an order on the books of said company, ordering the said Houston to remove said levee from the company's right of way, which the said Houston was proceeding to do, when this suit was commenced.

" 20. The construction of said levee on the lands of said plaintiff prevents the flow of water over his lands in the time of freshets, and thereby to some extent prevents the water from flowing beyond the limits of plaintiff's lands as rapidly as it otherwise would do, and has the effect to bank up the waters on the lands of William A. Moore and on and over the turnpike of the defendants, in extraordinary and unusual freshets or floods, and making it more liable to wash and be destroyed for the distance of one-fourth of a mile.

" 21. The said company obtained an easement over the lands of plaintiff by going thereon and constructing their road with the consent of the then land-owners, and by no other means."

Upon the foregoing facts the following were the conclusions of law:

" 1. As to the defendants Samuel D. Day and Allen Thomas there is an entire absence of proof to show any personal liability against either, and no cause of action exists as against either of them.

Shelbyville and Brandywine Turnpike Company *et al. v.* Green.

"2. The plaintiff, William F. Green, had the legal right to occupy the right of way of the said company with his levee, and build his levee over the travelled track thereof, so that he did not obstruct the rights of said company, or the public right of travel over the same.

"3. The plaintiff, Green, had the legal right to erect his levee on his own lands and fight the floods and freshets from his lands the best way he could, doing no unnecessary damage to the defendants, and because the said turnpike road was and is rendered more liable to overflow and damage would not in any way affect his right to erect and maintain his said levee.

"4. The said Day and Thomas should have judgment for their costs against the plaintiff.

"5. The plaintiff should recover against the defendants, the said Houston and the said turnpike company, and the injunction heretofore granted should be made perpetual.

"6. The defendant, the said turnpike company, should take nothing by its cross complaint herein."

To each of these conclusions of law the turnpike company and Houston excepted jointly and severally, and they jointly and severally moved for a new trial, and said motions were overruled and were followed by the proper exceptions to such overrulings, and by judgments upon the special findings, in favor of the defendants Day and Thomas, and against the defendants Houston and the turnpike company, pursuant to the prayer of the complaint. Said last named defendants jointly and severally excepted to the judgment against them, and they jointly appealed therefrom.

They assign errors jointly as follows:

1. In overruling the joint motion for a new trial.

2 and 3. In the conclusions of law.

4. In rendering the judgment.

And each of said appellants assigns separately the same errors as numbers 2, 3 and 4 of the joint assignment, and also error in overruling their separate motions for a new trial respectively. The joint and several motions for a new trial

present the same reasons therefor. These reasons are that the findings of the court are contrary to law.and are not sustained by sufficient evidence, and among the reasons for a new trial, it is alleged that the finding is contrary to law, because the court ought to have found and did not find facts proved under the issues, in the following particulars, to wit:

1, 2, 3 and 4. As to the amount of damages sustained by the turnpike company by the erection of the levee. Upon this it may be observed, that if the findings had been in favor of the appellants upon their answers and cross complaints, then the amount of damages might have been material, but the finding being in favor of the appellee throughout, the damages were not material. If the appellee had a right by building his levee to defend himself against the overflow, although by so doing the overflow on other land was increased, no damages could be recovered for such increase, and the amount thereof was altogether immaterial.

5. That the court failed to find the height of said levee above the travelled track of the road. If the appellee had the right to construct the levee as it was, the question as to its precise height was not at all material.

6. That the court did not find the width of the road where the levee crossed it.

7. That the court did not find the width of the appellant's right of way where the levee crossed it. But the court did find that the company occupied their embankment and roadbed, and that the owners of the adjoining lands placed their fences at the foot of the embankment, and have had them there ever since, and that the company never constructed any drains or ditches for its road on appellee's land. The width of the road and right of way under the findings of the court were altogether immaterial.

8. That the court did not find the description, beginning, height, bearing or distance of the levee. But the map, which is part of the finding, contains a sufficient description of the levee.

Shelbyville and Brandywine Turnpike Company *et al. v.* Green.

9. That the court does not find the distance between the south end of the levee and Elliott's levee on the opposite side of Blue river. But the court does find that the levee does not, in whole or in part, obstruct the channel of the river.

10 and 11. That the court did not find what would be the effect upon the road, as to the backwater, of removing all or part of the levee therefrom.

12 and 13. That the court found nothing as to what was the intention of the company in removing the levee. These matters were all immaterial, if the appellee had the right to build the levee as it was built, and this the court found.

14 and 15. That the court did not find the relative heights of the road and levee, nor the relative heights of the surface of the lands on both sides of the road. There was no issue as to any such matters, and they were immaterial.

16. That the court did not find whether the company owned the road, and was taking toll on it. There was no issue as to this matter. But the court did find that the company made the road by consent of the owners of the land, and was using and occupying it.

17. That the court did not find whether the place from which the company removed part of the levee was a part of the company's road. The court did find that the company was removing part of the levee from its right of way.

18. That the court did not find the depth of the removal of the levee. But the court finds that the defendants were removing it, and would remove it all unless enjoined; the precise quantity of earth taken away is immaterial; if the levee was lawfully there, the company had no right to remove any of it.

If all the matters above mentioned had been found by the court the legal effect of the facts would not have been changed. The findings were not contrary to law, and there was evidence tending to sustain all of them. There was no error in overruling the motion for a new trial.

The controlling questions in the case arise upon the speci-

fications alleging error in the conclusions of law. And the first question is, what are, in Indiana, the rights of a land-owner to protect himself against freshets and overflows? In *Taylor* v. *Fickas*, 64 Ind. 167 (31 Am. R. 114), it appeared that there was a frequent overflow in the Ohio river, and that the defendant had planted a row of trees on his own land, the effect of which was to cause the driftwood, which before had been carried by the overflow across and beyond the plaintiff's land, without damage to him, to lodge upon the plaintiff's land, and cover five acres of it with driftwood and brush from two to ten feet high, whereby said five acres became of no value. It was held that this gave the plaintiff no cause of action. It appeared there, as in the present case, that the overflow was the result of temporary causes, and was not usually there.

This case was cited with approbation in *Schlichter* v. *Phillipy*, 67 Ind. 201, and also in *Cairo, etc., R. R. Co.* v. *Stevens*, 73 Ind. 278 (38 Am. R. 139).

In the case last cited it was stated, as a general rule, that, "upon the boundaries of his own land, not interfering with any natural or prescriptive watercourse, the owner may erect such barriers as he may deem necessary to keep off surface-water or overflowing floods coming from or across adjacent lands; and for any consequent repulsion, turning aside or heaping up of these waters to the injury of other lands, he will not be responsible."

This must now be regarded as the established law in Indiana. See *Weis* v. *City of Madison*, 75 Ind. 241 (34 Am. R. 135); *Benthall* v. *Seifert*, 77 Ind. 302; *Cairo, etc., R. R. Co.* v. *Houry*, 77 Ind. 364. And this is decisive of the present case. The turnpike company, owning merely an easement, has no rights superior to those of land-owners. As to highways in general, the right of the public is only to pass and repass along the road. *Dovaston* v. *Payne*, 2 H. Bl. 527. The ownership of the soil of the highway is vested in the owner of the land over which it passes. *Lade* v. *Shepherd*, 2 Strange, 1004; *Stevens* v. *Whistler*, 11 East, 51.

The trees upon it, not needed for the repairs of the road, the pasture thereon, and the mines beneath it, belong to the owner of the soil; he may tunnel beneath it or put a bridge across it if the easement be not interfered with. *Goodtitle* v. *Alker*, 1 Burr. 133, per MANSFIELD; *Doe* v. *Wilkinson*, 3 B. & C. 413. It is no breach of the covenants of seizin and a right to convey, that a highway passes over the land. *Vaughn* v. *Stuzaker*, 16 Ind. 338. And it has been held that the owner of the soil may spread earth on the highway for the purpose of improving it as a way. *O'Linda* v. *Lothrop*, 21 Pick. 292. A highway is said to be nothing but an easement, comprehending merely the right of the public to pass and repass, and to do all acts necessary to keep the highway in repair. This easement does not embrace any interest in the soil; the freehold continues in the owner of the soil subject to the easement. *Peck* v. *Smith*, 1 Conn. 103. The owner retains every right except the easement belonging to the public. *Trustees, etc.,* v. *Auburn, etc., R. R. Co.*, 3 Hill, 567. And this is the law of Indiana. *Brookville, etc., Co.* v. *Butler*, 91 Ind. 134 (46 Am. R. 580). So, in the case of an incorporated turnpike company, the corporation has, ordinarily, a mere franchise or incorporeal hereditament authorizing it to make and maintain the road and take tolls. *Tippets* v. *Walker*, 4 Mass. 595; *Fisher.* v. *Coyle*, 3 Watts, 407. The freehold, subject to the easement, remains in the owner of the soil. *Ridge Turnpike Co.* v. *Stoever*, 2 Watts & Serg. 548; *Vaughn* v. *Stuzaker, supra; Cox* v. *Louisville, etc., R. R. Co.*, 48 Ind. 178.

The foregoing authorities show that there was no error in the conclusions of law. For the purpose of determining the validity of such conclusions, the facts found must be regarded as correctly found. Here the facts found are, substantially, that the plaintiff, to protect himself from the occasional overflowings of Blue river, built a levee on his own land, which accomplished his purpose, but at the same time increased the quantity of water carried by these overflowings upon the adjacent lands and upon the turnpike, but that the levee did

not obstruct any channel of Blue river, and was not erected across any such channel either in whole or in part, and does not interfere with or render inconvenient the public or corporate use and enjoyment of the turnpike or the adjacent ground. Upon these facts the plaintiff did exactly what he had a right to do. The easement of the turnpike company gave no rights in this matter superior to those of an adjacent land-owner, and the facts that the turnpike was built by the plaintiff's consent, and that he was notified not to build his levee really amount to nothing.

The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things, affirmed, at the costs of the appellant.

Filed Sept. 27, 1884. Petition for a rehearing overruled Jan. 23, 1885.