# Clay et al. v. Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company.

[No. 20,267.   Filed March 30, 1905.]

1.  WATERS AND WATERCOURSES.—*Surface.*—*Obstruction.*—A railroad company is not liable for making an embankment which dams the flow of surface waters when there is no natural watercourse, nor prescriptive rights to flow such waters over the right of way of such company.  p. 443.

2.  SAME.—*Easement.*—*User.*—A mere permissive use of a culvert over a railroad right of way does not create an easement by prescription, but it must be shown that such use was adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which the easement is claimed.  p. 445.

3.  SAME.—*Surface.*—*Obstruction.*—A landowner may erect embankments and prevent the flow of outside surface waters on his lands, even though damages ensue thereby to an adjoining proprietor, but he may not collect surface waters on his land and discharge same on his neighbor.  p. 446.

From Lake Circuit Court; *Willis C. McMahan,* Judge.

Action by John H. Clay and wife against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for defendant, plaintiffs appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*Thomas J. Wood,* for appellants.
*G. E. Ross,* for appellee.

JORDAN, J.—Appellants sued appellee railroad company upon a complaint consisting of three paragraphs, the first of which alleges, substantially, the following facts: The appellee is a railroad corporation operating a line of railway from the city of Pittsburg, Pennsylvania, to the city of Chicago, Illinois, running through the town of Crown Point, Lake county, Indiana. The appellants are the owners in fee simple of certain described real estate situated in Young's

first addition to said town of Crown Point. A natural watercourse runs through the center of appellants' land onto and through the appellee's right of way. When the main line of said railroad was constructed, a large culvert was built under and through the railroad embankment. This culvert was kept open for over thirty years, and served to drain the water from appellants' real estate and from other adjoining land. Appellants and their predecessors used said culvert for more than thirty years last past for the flowage of water from their lands, and during all of said time such flowage has been continuous and uninterrupted, all of which was with the knowledge and acquiescence of appellee and its predecessors. It is alleged that appellants thereby claimed an easement by prescription to flow all of the water from their lands through said culvert. It is charged that about four years ago appellee built another railroad bed on the south side of its main line on its right of way opposite appellants' real estate, and negligently made and constructed the same by filling with earth and making an embankment over and across said watercourse and filling up the same, and neglected and carelessly omitted the construction of a culvert under the same to drain off the water running down the said watercourse, and did not provide any way for said water to run away from the lands and lots of appellants. By reason of said obstruction or embankment a large amount of water accumulates upon their real estate, and is dammed up thereon, and covers the same for about six months during the year, thereby rendering the said real estate worthless for any use, etc. The rental value of the real estate is alleged, and the manner in which stagnant ponds of water are caused to stand thereon by the act of the appellee is alleged. Appellants demanded judgment that a peremptory writ of mandate be issued against the appellee commanding it to open said culvert, and that they be awarded damages to the amount of $300, and all other proper relief.

The second paragraph substantially proceeds upon the same theory as does the first. It is demanded therein that a peremptory writ of mandamus be issued against the appellee compelling it to open the culvert in question, and that damages be awarded appellants in the sum of $500.

The third paragraph is similar to the first and second, except that no prescriptive right to flow water through the culvert in question onto the premises of the appellee is claimed. It is charged therein that all surface-water from rains which fell upon appellants' lands and upon those adjoining ran through said culvert until about four years ago, when the appellee constructed another railroad bed on its right of way opposite to appellants' real estate, and negligently and improperly made and constructed the same by filling in earth, thereby making a high embankment, filling up said watercourse, and omitted the construction of a culvert or drain to carry off the water which fell upon the appellants' lands, and failed to dig any ditch or provide any way for said surface-water to be carried off of appellants' said real estate, and that by reason of said embankment or obstruction large amounts of water accumulate upon their said lands by reason of the rain and melting snow, and that the same is by means of said embankment dammed up and caused to stand upon appellants' land, to their damage, etc. The relief demanded under the facts alleged in the third paragraph is the same as that prayed for in the first and second.

A demurrer to each paragraph of the complaint was overruled, and appellee answered by the general denial, and the cause was submitted to the court for trial upon the evidence agreed upon in writing by said parties. Upon the evidence the court found in favor of appellee, and, over appellants' motion for a new trial—assigning as grounds therein (1) that the decision of the court is contrary to law, and (2) the decision is contrary to the evidence—rendered judgment against them for costs.

The errors assigned are based on the action of the court in denying appellants a new trial.

The facts agreed upon by the parties and submitted to the court to be considered as the evidence in the case are as follows: "The plaintiffs are now, and they and their grantors have been, the owners and in possession for thirty years past of the following described real estate in Lake county, in the State of Indiana, to wit [describing certain lots in Young's first addition to Crown Point], and the defendant and its predecessors have owned and been in possession during said years of a strip of land 100 feet in width, passing through said Young's addition in a northwesterly and southeasterly direction; that upon said strip of land, and in the center thereof, has been located, constructed, operated and maintained during said years a railroad track, or tracks, used in the carriage of freight and passengers, state and interstate; that prior to the location and construction of said railroad all the lands in said addition and that adjoining thereto were more or less flat, with the general fall or slope thereof from the northwest, west and south towards the plaintiffs' said lots and said strip now used by the defendant as its right of way, and all the water which fell, or came from the melting snow on the lands northwest, west and south of plaintiffs' said property run toward and over their said property and the adjoining property, and passed north and easterly across the strip now owned by the defendant as a right of way, that being the natural and usual way for all the surface-water; that when the defendant's predecessor built said railroad, or shortly thereafter, to wit, some thirty years ago, it made an embankment of earth, sand and gravel upon which to lay and build its railroad track, and at a point almost opposite plaintiffs' said lots put in said embankment a trestle or culvert through which to permit said water to run, and from that time until about four years ago all the water which fell or accumulated within a distance of five hundred or six hundred feet of plaintiffs' said lots, to the northwest,

west and south thereof, and which ran down upon and over plaintiffs' lots, and also that part which ran upon said right of way and did not flow over or upon plaintiffs' lots, had an outlet through and passed over and across defendant's said right of way at said culvert or trestle; that said culvert or trestle was the only outlet or way for said water to escape or pass from plaintiffs' lands or from the adjoining lands; that about four years ago the defendant filled and closed up said trestle or culvert so that the water falling and accumulating and running down as theretofore upon and across plaintiffs' lots, the adjoining lands and said right of way, could not escape, but by reason thereof was backed up and forced over the right of way fifty feet, then upon plaintiffs' said lots, and remained thereon at almost all seasons of the year, rendering said lots useless and worthless for the purposes for which they had previously been used; that prior to the building of said railroad, and during the time said trestle or culvert was open and unobstructed, the waters passed off from plaintiffs' said lots, and they became dry and grass grew thereon, and they were able to and did pasture the same, realizing therefrom about $10 per year. If upon these facts the court concludes that the plaintiffs are entitled to recover, then it is agreed between the parties that the court shall order the defendant to build and maintain at the location of said old culvert a culvert or waterway of sufficient size and capacity to carry off said water." This was all the evidence given in said cause, and the same has been made a part of the record by a bill of exceptions.

1. The facts disclose that the water in question is nothing more than mere surface-water which runs down, upon and over the lands of appellants, and therefrom onto appellee's right of way. For the repulsion or turning back of this water, under the circumstances, appellee can not be held legally responsible. Under the law it owed no duty to appellants to provide and maintain a culvert or other means by or through which such water might be carried or

drained from appellants' premises. The fact that the rail-road company closed the culvert which had been constructed on its right of way, so that the surface-water which was wont to accumulate on appellants' lands could not flow there-from onto appellee's right of way as it had previously done as shown by the facts, affords appellants no right of action.

The decisions of this court fully affirm that every land-owner has the right, providing he does not interfere with a natural or prescriptive watercourse, to construct or build on his own land levees, embankments or other barriers to pro-tect his property from surface-water which flows thereon from adjoining land. A railroad company is accorded the same right in the use or protection of its right of way. *Cairo, etc., R. Co.* v. *Stevens* (1881), 73 Ind. 278, 38 Am. Rep. 139; *Cairo, etc., R. Co.* v. *Houry* (1881), 77 Ind. 364; *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135; *Taylor* v. *Fickas* (1878), 64 Ind. 167, 31 Am. Rep. 114; *Shelbyville, etc., Turnpike Co.* v. *Green* (1885), 99 Ind. 205; *Hill* v. *Cincinnati, etc., R. Co.* (1887), 109 Ind. 511. See, also, *Lake Erie, etc., R. Co.* v. *Hilfiker* (1895,) 12 Ind. App. 280; *Cleveland, etc., R. Co.* v. *Huddleston* (1899), 21 Ind. App. 621, 69 Am. St. 385.

In *Cairo, etc., R. Co.* v. *Stevens, supra,* this court, by Woods, J., speaking as the organ of the court, said: "With reasonably near approximation to accuracy, it may be laid down as a general rule, that upon the boundaries of his own land, not interfering with any natural or prescriptive watercourse, the owner may erect such barriers as he may deem necessary to keep off surface-water or overflowing floods coming from or across adjacent lands; and for any consequent repulsion, turning aside or heaping up of these waters to the injury of other lands, he will not be respon-sible; but such waters as fall in rain and snow on his land, or come thereon by surface drainage from or over contiguous lands, he must keep within his boundaries, or permit them to flow off without artificial interference, unless within the

limits of his land he can turn them into a natural water-course. This is in accordance with the general principle, that such waters are a common enemy which each proprietor may fight off as he will; but, once on his land, they become his property (in a qualified sense, of course), and the maxim applies, *'Sic utere tuo, ut alienum non laedas.'* "

2. It is contended by appellants' counsel that the facts disclose that the surface-water on the lands of appellants had for a period of over thirty years an outlet through and over appellee's right of way at the culvert in controversy. Hence the argument is advanced that thereby they are shown to have acquired a prescriptive right to continue without interruption on the part of appellee to flow or run such water through the culvert onto and over appellee's right of way. This insistence, however, is not sustained by the facts. There is virtually an entire absence of facts going to establish a prescriptive right or easement in this respect in appellee's right of way. A mere permissive use by one party of the lands of another does not create an easement therein. In order to create an easement in lands the use thereof must appear to have been adverse, under a claim of right, exclusive, continuous, uninterrupted, with knowledge and acquiescence of the owner of the land over which the easement is claimed. *Davis* v. *Cleveland, etc., R. Co.* (1895), 140 Ind. 468, and cases there cited; *Cleveland, etc., R. Co.* v. *Huddleston, supra.*

In Gould, Waters (2d ed.), §279, the author, speaking relative to the acquirement of a prescriptive right by a landowner to discharge or run surface-water from his premises onto adjoining lands, states the rule as follows: "An owner of land, the natural drainage of which flows over the land of an adjoining owner, can not by any lapse of time gain a right by prescription to have such flow continue, if at any time the owner of the lower estate chooses to interrupt or divert such flow. * * * But the owner of land, by collecting into artificial channels the surface water or super-

ficial drainage there flowing, and discharging such accumulations upon or across the land of an adjoining owner adversely for a sufficient length of time, may acquire an easement in such adjacent land for the continuance of such discharge."

3. Of course, appellee would have no legal right by erecting embankments or by constructing culverts on its right of way to discharge from its premises large or unusual quantities of surface-water which had accumulated thereon onto or over the adjoining lands of another. But it must be accorded the legal right on its own land to construct embankments or other barriers to prevent or repel from its roadbed or right of way the influx of surface-water from adjoining lands, and, if such water is thereby backed or turned aside onto adjoining lands to the injury thereof, it will afford the owner of such property no cause of action for the injury sustained. In a legal sense it will be considered *damnum absque injuria.* This rule has been repeatedly affirmed and enforced in this jurisdiction since the decision in the case of *Taylor* v. *Fickas, supra.* In some of our sister states, where the influence of the civil law is recognized, the rule is different, and the owner of land is not permitted to obstruct or alter the natural flow of surface-water which his estate owes a servitude to receive. Gould, Waters (2d ed.), §276.

Under the facts the judgment of the lower court is a correct result, and is therefore affirmed.

Gillett, J., did not participate in this decision.