CENTRAL INDIANA COAL COMPANY, INC. *v.* GOODMAN.

[No. 16,705. Filed February 13, 1942. Rehearing denied April 15, 1942. Transfer denied May 15, 1942.]

*Will H. Hays, Hinkle C. Hays, Alonzo C. Owens, John S. Taylor, John T. Hays, J. O. Vanier,* and *Will H. Hays, Jr.,* all of Sullivan, and *Allen, Hastings & Allen,* of Washington, for appellant.

*Daniel W. McIntosh,* of Linton, *J. Clyde Crane,* of Bloomfield, and *Alvin Padgett* and *Arthur Rogers,* both of Washington, for appellee.

STEVENSON, J.—The issues in this case were formed by the appellee's amended complaint in three paragraphs, to each of which the appellant addressed an answer in general denial.

The first paragraph of amended complaint alleged that the appellee is the owner of approximately thirty-five and one-half acres of real estate in Greene County, Indiana, which slopes generally to the south and east, and along the south line of which there is constructed an improved ditch or drain, the water in which flows in an easterly direction.

The complaint alleges that the appellant, as defendant, is a corporation and is engaged in the business of mining coal on lands west from the real estate of the appellee, by a process known as strip mining. The complaint alleges that the appellant in so mining and removing coal has cut, dug, and left there unfilled with earth a large, long, deep, wide excavation in the surface of the earth which extends for a mile or more in length. The first paragraph of amended complaint alleges that in so excavating the appellant cut into and opened up the underground workings of an old abandoned mine, which had become full of obnoxious, polluted, and injurious water, which was heavily laden with chemical ingredients and mineral salts, and which was destructive and injurious to plant and animal life. This water was permitted to mingle with the water in the channel and excavation cut by the appellant, with the result that the entire volume of water contained in said channel became polluted and dangerous to plant and animal life. The complaint then alleges,

"That at divers times within the five years last past, when the defendant knew of the destructive and injurious chemicals and ingredients contained in said water, as aforesaid, and the slope and drainage of said lands surrounding said body of water in said trench, channel, and excavation, as aforesaid, or by the exercise of reasonable care, could have known the same, said defendant wrongfully suffered and permitted said body of water to overflow its banks and escape from said trench, channel, and excavation, and run over, upon, and across lands adjoining said body of water, and from thence over, upon, and across plaintiff's said tract of real estate, and also to run over, upon, and across lands adjoining said body of water and from thence into said improved ditch which runs along and abuts the entire south side of plaintiff's said real estate, and to overflow from said improved ditch over, upon, and across plaintiff's said tract of real estate;

that said water which so ran over, upon, and across plaintiff's said tract of real estate, as aforesaid, stood in great quantities thereon and large quantities thereof seeped, soaked, and percolated into the soil of plaintiff's said tract of real estate by reason of all .which plaintiff's said real estate was injured and rendered sterile and unproductive, and the crops and vegetation growing thereon were injured and destroyed, all to plaintiff's damage in the sum of Five Thousand ($5,000.00) Dollars."

The second paragraph of amended complaint contained substantially the same allegations, but contained the additional allegation that after said excavation became filled with the polluted water, the appellant cut a channel through the south bank of said excavation and wrongfully permitted the water therefrom to drain into the improved ditch, which passes along the south boundary of appellee's farm.

This paragraph of complaint charged that the appellant wrongfully suffered, permitted and allowed said water to escape from said improved ditch and overflow the banks thereof onto plaintiff's said tract of real estate, thereby injuring and rendering unproductive his soil.

The third paragraph of amended complaint, in addition to the same allegations, charged that the appellant wrongfully dug and drilled into the abandoned mine and drained the polluted water therein into the improved ditch which abuts the appellee's real estate, which polluted water escaped and overflowed the banks thereof and spread over the appellee's real estate, and stood in great quantities thereon, thereby damaging the production and fertility of appellee's soil.

Upon the issues thus formed by the answers in general denial, the case was submitted to a court for trial; and, the court, after hearing the evidence, returned a

finding against the appellant and in favor of the appellee; and fixed his damages in the sum of $660.00. Judgment was entered accordingly. The appellant filed a motion for a new trial, which was overruled, and this appeal has been perfected. The only error presented to this court on appeal is the alleged error in overruling the appellant's motion for a new trial. Under this assignment of error, the appellant contends that the evidence is insufficient to sustain the decision of the court.

The record discloses that the appellant, while engaged in the strip mining of coal, had made large excavations on the land near the appellee's farm, and had permitted them to become filled with water. The evidence further discloses that in such mining operations, the appellant had cut into an old abandoned mine, which was filled with acid water, and this water had flowed out into these excavations, thereby polluting the water which accumulated in these excavations to the extent that they became red in color and of sufficient acid content to destroy plant and animal life. There is further evidence from which the court might infer that the appellant, by means of pipes and artificial channels, discharged this polluted water into the drainage ditch which adjoins the appellee's land. There is further evidence that in May, 1935, as a result of a heavy rain, this ditch overflowed its banks and overflowed the land of the appellee, and water from this overflow stood on the appellee's land, leaving it red in color and of such acidity as to injure the fertility of the soil. There is further evidence that the abandoned mine was sealed by the government authorities following this overflow to prevent subsequent pollution and damage from its acidious waters.

The law governing this case is fairly well established, and the facts are not in dispute as to the appellant having collected on its land this polluted water. As this court has said:

" 'We think that the true rule of law is, that the person who for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape. . . . It seems but reasonable and just that the neighbor, who has brought something on his own property which was not naturally there, harmless to others so long as it is confined to his own property, but which he knows to be mischievous if it gets on his neighbor's, should be obliged to make good the damage which ensues if he does not succeed in confining it to his own property. But for his act in bringing it there no mischief could have accrued, and it seems but just that he should at his peril keep it there so that no mischief may accrue, or answer for the natural and anticipated consequence. And upon authority, this we think is established to be the law whether the things so brought be beasts, or water, or filth, or stenches.' " *Niagara Oil Co.* v. *Jackson* (1911), 48 Ind. App. 238, 241, 91 N. E. 825.

This rule of law was subsequently approved by the Supreme Court of our State in the case of *Niagara Oil Co.* v. *Ogle* (1912), 177 Ind. 292, 98 N. E. 60.

While the appellee's land is servient to the flow of surface water as the laws of nature would cast the same from the appellant's land, it is not servient to water contaminated by the acts of the appellant and cast upon the lands of the appellee through artificial channels. The rule is that:

"If an upper landowner alters the natural conditions so as to change the course of the water, or concentrates it at a particular point, or by arti-

ficial means increases its volume, he becomes liable for any injury caused thereby." *Tichenor* v. *Witherspoon* (1928), 87 Ind. App. 79, 82, 158 N. E. 514.

There is evidence to the effect that the appellant, in the operation of its business collected large quantities of water upon its land, which were permitted to remain there and which were so polluted with the waters from the abandoned mine as to be destructive of plant and animal life. Having collected this dangerous substance on its land, the appellant was bound to keep it there at its peril. If this polluted water was permitted to go onto the land of the appellee to his damage, we think it clear that the appellant is obligated to make good the loss to the appellee occasioned thereby. 36 Am. Jur., § 191, p. 410.

It is the appellant's position that even though it be conceded that water from the appellant's land was cast into the drainage ditch, which subsequently overflowed, the acid content of the overflowed water would be too slight to occasion any damage to the appellee. While this contention is persuasive, we cannot say as a matter of law that no large quantities of acid water came onto appellee's land as a result of this overflow. This was a question of fact for the trial court to determine.

A case similar to the one at bar is that of *Beaver Dam Coal Company* v. *Daniel* (1929), 227 Ky. 423, 426, 13 S. W. (2d) 254. In this case copperas water from the appellant's mine was discharged into a stream which later overflowed the appellees' lands. The appellant insisted that a single inundation was wholly insufficient to affect the fertility of appellees' soil. The appellant accordingly moved for a directed verdict. The court said:

"Inasmuch as there is evidence from a number of witnesses that the water which covered plaintiffs' land was impregnated with copperas, that a large stream of copperas water was flowing from defendant's land into the branch and onto plaintiffs' land, and that when the waters receded copperas could be seen on the land and vegetation, whether this was true and, if true, that plaintiffs' land was thereby damaged, was the very gravamen of the complaint and pure questions of fact to be determined by the jury. The motion for a peremptory instruction, therefore, was properly overruled."

In the light of these authorities, it is our opinion that there is evidence in this record sufficient to support the judgment of the trial court by which damages were awarded to the appellee. There was accordingly no error in overruling the appellant's motion for a new trial. Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Bedwell, P. J., not participating.

NOTE.—Reported in 39 N. E. (2d) 484.