RATCLIFFE ET AL., APPELLANTS, *v.* INDIAN HILL ACRES, INC., APPELLEE.

(No. 7635—Decided November 17, 1952.)

*Messrs. Barnhorn & Barnhorn,* for appellants.
*Messrs. Taft, Stettinius & Hollister,* for appellee.

MATTHEWS, J. This is an appeal from a judgment for defendant in pursuance of a verdict returned in an action, brought by plaintiffs as owners against the defendant as an adjoining owner of land, for causing mud and seeds of weeds to be carried from its land in sur-

face water accumulated in a natural watercourse and deposited in an artificial pond on plaintiff's land, into which the stream emptied.

The bill of exceptions does not purport to contain any of the evidence upon which the verdict was rendered. It is limited to bringing upon the record five special charges, the general charge, and certain recitals, the legal sufficiency of which, as a predicate for a review of the alleged errors, is in dispute. These general recitals are that the cause came on to be heard on its merits on the amended petition, the answer thereto and the reply to the answer and "the issues made by said pleadings and was submitted to a jury" and that at the trial "the opposing parties presented, offered and caused to be introduced evidence to maintain such issues on their respective parts." After the conclusion of the evidence, the court, on defendant's request, gave the special charges to which the plaintiffs excepted, and, after arguments to the jury, instructed the jury generally, to which plaintiffs likewise excepted.

In this condition of the record, counsel urge that this court must assume that the verdict was predicated upon the admissions contained in the answer, and on those admissions alone. In view of the general recitals in the bill of exceptions that the cause came on to be heard on the designated pleadings and the issues made thereby, and that the parties introduced evidence to maintain (that is sustain, uphold, or support) those issues, we are of the opinion that we must test the correctness of the special charges and the general charge on the assumption that the evidence justified the submission to the jury of material issues of fact, if any, raised by the pleadings. That, in effect, is the record which the trial judge has certified to this court.

Counsel cite *Elser* v. *Parke,* 142 Ohio St., 261, 51 N.

E. (2d), 711, as requiring a bill of exceptions containing all the evidence to enable a reviewing court to pass upon the validity of a charge. We do not think the court intended to or did lay down any such universal rule. It is true that the court stated in the syllabus that: "Where the correctness of the charge of the court to the jury is dependent upon the evidence and the bill of exceptions does not contain all of the evidence a reviewing court cannot say that portions of the charge to the jury which are complained of were not properly given." But the syllabus must be interpreted against the background of the facts. The Court of Appeals had reversed a judgment in an action for damages on account of personal injuries received in a collision between two automobiles on a public highway. The reversal was on the ground that: "Upon the evidence submitted upon rehearing the two-issue rule is not applicable and the giving of Section 6310-22 of the General Code was prejudicially erroneous." It was that judgment which was under review by the Supreme Court. An examination of the opinion and the record of the case in the Supreme Court discloses that there were two partial bills of exceptions before the Court of Appeals, neither of which purported to contain all the evidence. There was no certificate of the trial judge as to the nature or evidential tendency of the omitted evidence. The relevancy of Section 6310-22, General Code, depended on whether there was evidence tending to prove that defendant was turning at the time of the collision. Manifestly, in the absence of a complete bill of exceptions or a certificate of the trial judge that there was or was not such evidence, the court could not say that prejudicial error, or any error, was committed in the giving of the charge.

That the Supreme Court did not intend to declare

that in all cases a complete bill of exceptions containing all the evidence is necessary to secure a review of the validity of a charge is made manifest by what it said on page 272: "Assuming that the present case presents an exception to the general rule," and then the court proceeded to pass on the question of whether the alleged error would be prejudicial to the appellant on that assumption.

While there is some uncertainty in the law as to the sufficiency, under certain circumstances, of a partial bill of exceptions to permit an appellate court to review certain alleged errors, we are of the opinion that an analysis of the statutes and the cases found in 2 Ohio Jurisprudence, commencing on page 566, and especially sections 340 and 362, justifies our conclusion that the validity of an instruction may be tested on a bill of exceptions, such as is found here. Whether a bill containing only the charge would be sufficient, we are not required to decide.

We, therefore, turn to the pleadings to determine what issues are presented, to sustain which, the parties introduced evidence.

In their amended petition, after describing their property, the plaintiffs alleged that when they became the owners thereof, it was improved by a residence, an accessory outbuilding, and a large artificial lake, fed by spring water from beneath and by surface water flowing into it from all directions; that this lake was created by the construction of a barrier or dam at the lower level on plaintiffs' land; that during their ownership, the property had remained unoccupied; and that during their ownership they had altered and improved the residence and the land to make it a suitable home.

They alleged also that the defendant was the owner of adjacent land, the natural slope of which was downward toward and across the plaintiffs' land, so that

surface water flowed therefrom upon and across their land in a well-defined stream and emptied into the artificial pond or lake on plaintiffs' property.

The plaintiffs alleged also that they maintained the pond for the purpose of fishing, watering of live stock and beautification of the real estate.

The plaintiffs alleged further that the defendant "conducted various and extensive grading and excavating operations upon said lands and in so doing caused the said stream of water to become polluted with mud and other impurities which were carried onto plaintiffs' land and deposited in plaintiffs' above described lake. As a direct consequence of defendant's said operations and of the manner of said operations, the plaintiffs' lake became filled with mud, seeds and impure substances to the extent of almost its entire depth."

The action was for damages. It will be observed that there is no allegation of negligence or unreasonable or improper manner of using the defendant's property.

In its answer, the defendant admitted the ownership, location, and description of the real estate, and the existence of the stream and artificial lake, as alleged by the plaintiffs, and then alleged that during the fall and winter of 1946 it had done some minor grading of its real estate, that the grading was conducted in the usual and reasonable way for the reasonable development of its land, and that it did not increase or decrease the drainage area or the flow of water into the stream which flowed into plaintiffs' lake.

The plaintiffs, by reply, placed the affirmative allegations of the answer in issue. Construed most favorably, and perhaps too liberally in favor of the plaintiffs, the issues of fact raised by these pleadings are:

(1) Did defendant cause mud, seeds, and impurities

to enter the stream that emptied into the plaintiffs' artificial lake, and thereby cause the mud, seeds, and impurities to be deposited in the pond?

(2) Was the grading operation conducted in a usual and reasonable way in the reasonable development of defendant's land?

(3) What damage did the plaintiffs' suffer?

The trial court has certified that the parties introduced evidence in support of all these issues. The correctness of the charges must be determined on that basis. Then the further question presents itself that, assuming error in the charge, whether on the pleadings and the evidence the plaintiffs have established a right to have these issues submitted to a jury, whether, in other words, a finding of all of them in plaintiffs' favor would justify the entering of judgment for them. We are of the opinion that this further question is dispositive of this case. The defendant raised this question by demurrer to the plaintiffs' amended petition. We are of the opinion that it should have been sustained. However, the same fundamental question is raised by a consideration of the whole record. That question is whether the owner of land has a right to use it in the usual, reasonable, and customary way, notwithstanding some incidental damage may result to adjacent land by reason of such use. Stated differently, must there be an allegation and proof of failure to exercise reasonable care in the manner of exercising the rights of proprietorship and in anticipating that harm would result to the adjoining land to justify a recovery?

In 1 American Jurisprudence, 505, Section 3, it is stated:

"It is not to be inferred from this statement of the rule that the law forbids any and all uses of property which may cause loss, damage, or inconvenience.

Every person is entitled to make a reasonable use of his property. Therefore, while the rightful use of one's own land may not infrequently have some effect to diminish the value of an adjoining estate, or to prevent its being used with the comfort which might otherwise have been anticipated, this is *damnum absque injuria*, as to which the law cannot interfere."

At page 506, *ibid.*, it is said:

"The test of the permissible use of one's own land is not whether the use or the act causes injury to his neighbor's property, or whether the injury was the natural consequence, or whether the act is in the nature of a nuisance, but the inquiry is, was the act or use a reasonable exercise of the dominion which the owner of property has by virtue of his ownership over his property, having regard to all interests affected, his own and those of his neighbors, and having in view also, public policy."

Substantially the same statement of the law is found in 1 Ohio Jurisprudence, 413 *et seq.*

In the exercise of the rights of ownership, one of the usual and reasonable activities is the control and disposition of surface water and the facilitation of its final discharge in accordance with the contour of the watershed, and so long as no unreasonable or negligent act is committed by the owner of the dominant estate, the servient estate has no cause of action, notwithstanding he may suffer some incidental damage or his burden be somewhat increased. *Mason* v. *Commrs. of Fulton Co.*, 80 Ohio St., 151, 88 N. E., 401, 131 Am. St. Rep., 689, 24 L. R. A. (N. S.), 903; *McCoy* v. *Rankin*, 42 N. E. (2d), 234.

There is no allegation that the defendant diverted onto plaintiffs' land water that would not naturally reach it. Cases imposing liability under such circumstances are therefore inapplicable. This case is limit-

ed to a consideration of rights and liabilities of dominant and servient owners in surface water flowing into a natural stream from its natural watershed.

In 56 American Jurisprudence, 833, and, 834, Section 415, it is said:

"The use of a stream by upper owners for mill purposes, for irrigation, watering cattle, and the manifold purposes for which they may lawfully use it, will tend to render the water more or less impure. Cultivating and fertilizing the lands bordering on the stream, and in which are its sources, and their occupation by farmhouses and other erections, will unavoidably cause impurities to be carried into the stream. As the lands are subdivided and their occupation and use become multifarious, these causes will be rendered more operative, and their effects more perceptible. The water may thus be rendered unfit for many uses for which it had before been suitable; but so far as that condition results only from reasonable use of the stream in accordance with the common right, the lower riparian proprietor has no remedy. When the population becomes dense, and towns or villages arise along its banks, the stream naturally and necessarily suffers still greater deterioration. Highways crossing it, or running by its side, with their gutters and sluices discharging into it their surface water collected from over large spaces, and carrying with it in suspension the loose and light material that is thus swept off, are abundant sources of impurity, against which the law affords no redress of action."

*Stewart* v. *Birchfield*, 15 Cal. App., 378, 114 P. 999, is dissimilar in its facts to the case at bar, but it seems to us to involve the same principle. The parties owned adjoining lots, the soil of which was sandy and dry. The wind blew over defendant's land in the direction of plaintiff's land. The defendant cleared his land

of brush, and leveled it, and exposed and loosened the soil, resulting in quantities of soil being carried by the wind onto the plaintiff's land and deposited thereon in mounds. The court held that the plaintiff had no cause of action, and at page 381, quoting from Sherman and Redfield on Negligence, the court said: " 'Every man may use his own land for all lawful purposes to which such lands are usually applied, without being answerable for the consequences, provided he exercises ordinary care and skill to prevent any unnecessary injury to the adjacent landowner. It is not, therefore, necessarily negligence on the part of a landowner to make a use of his land which inevitably produces loss to his neighbor; for as he may wilfully adopt such a course, and yet not be a wrongdoer, much less is he liable for unintentionally doing that which he has a right to do intentionally.' "

While there are several assignments of error, the only one argued in the brief or orally relates to the following statement in the general charge:

"It is a general principle of law that every person may make such use as he will of his own property but it does *not* limit the use of one's property so as not to injure the property of others."

That portion of the general charge was immediately followed by the further statement: "The reasonableness of the use and the convenience of the owner has been the test." Following that statement the court proceeded to set forth the specific circumstances under which the plaintiffs would be entitled to recover, and the circumstances under which the defendant would be entitled to a verdict. We are of the opinion that the charge considered as an abstract statement of the law is free of error—certainly free of affirmative error.

However, as already noted, we are of the opinion that the issues presented by the pleadings were im-

material, that the demurrers should have been sustained, and, therefore, that no prejudicial error could have resulted to the plaintiffs.

There is another reason, which, in our judgment, precludes the plaintiffs from recovering. It is alleged by the plaintiffs that this lake was created by the building of a dam or barrier upon their land across the stream. They thereby checked or stopped the normal flow of the water and caused it to overflow its banks and spread over their land. By thus interrupting, slowing down, or stopping the normal flow of the water, they caused the mud and impurities to be precipitated. While the plaintiffs had a right to use the water to create the pond, provided they permitted it to reach the lower riparian owner in substantially normal flow, they cannot complain of damage resulting to them from their own act. See *Rau* v. *Minnesota Valley Rd. Co.*, 13 Minn., 442.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.