ARTHUR P. GUMZ *v.* JOHN BEJES AND ARLENE BEJES, HIS WIFE; CHARLES E. TROIKE AND CLARABELLE TROIKE, HIS WIFE; ARLENE BEJES, EXECUTRIX OF THE ESTATE OF ALICE JOHNSON, DECEASED; WILLIAM F. SCHACHT AND JEANNE SCHACHT, HIS WIFE.

[No. 3-473A35. Filed January 23, 1975. Rehearing denied February 27, 1975. Transfer denied October 27, 1975.]

*John E. Hughes, Gordon A. Etzler, Chester, Clifford, Hoeppner & Houran,* of Valparaiso, *Lester L. Wilson,* of Winamac, for appellant.

*John E. Newby, Edward L. Volk, Newby, Lewis, Kaminski & Jones,* of LaPorte, for appellees.

GARRARD, J.—This appeal involves cross actions seeking injunctive relief and damages. The trial court granted an injunction and nominal damages to the appellees (the adjoining landowners) and refused relief to appellant (Gumz). In addition to questioning the court's grant of relief to the adjoining landowners and its denial of relief to Gumz, it is also asserted that the court erred in refusing a jury trial.

The factual background discloses that prior to the incidents which erupted into litigation, all the parties were generally engaged in farming an area in Starke County, Indiana. The area was drained (and sometimes irrigated) through the use of open ditches. The dispute before us stems from the utilization of two of these ditches.

The Vessley Ditch (Vessley) runs north and south. Gumz farmed land west of this ditch and the adjoining landowners farmed to the east of it. Just north of the bulk of the farming operations involved, the Vessley Ditch intersects the Lemke Ditch (Lemke) at right angles. The Lemke Ditch proceeds westerly until it enters what is known as the Kline Arm and thence proceeds to the Kankakee River.

During normal times, water flow is northerly in the Vessley to the Lemke and thence westerly to the Kline Arm and the river. However, when the Kankakee River reaches flood stage, this flow is reversed and flood waters endanger the lands of the parties.

Several years before the commencement of litigation, this state of affairs had resulted in two "modifications" to the ditch system. In order to protect the land he farmed, Mr. Gumz had erected and maintained earthworks, or dikes, along the south bank of the Lemke and the west bank of the Vessley. In addition, a dam-like obstacle containing a culvert and a water control gate (hereinafter referred to as the "obstruction") was installed at the approximate intersection of these two ditches. Eighteen inch pumps were then used to pass water from one ditch to the other. From this arrangement it was possible to either retain water in the Vessley or to prevent it from entering the Vessley from the Lemke.

The evidence also disclosed that on the acreage he farmed, Mr. Gumz had erected dikes along other ditches, had dug private ditches, and had installed the same sort of water control dams which utilized eighteen inch pumps to control the impoundment of water in the ditches.

Gumz incurred substantial expenses, especially in the early years, in creating and maintaining his system to keep the land farmable and productive. Thus it was that on March 9, 1972, Gumz mailed identical letters to several of his neighbors, including appellees, which read as follows:

"Neighbors:

The up-keep and interest on money invested for building dykes to protect land from flooding in Starke County, east of the Burrough's land runs well over $6000 a year. For over 30 years, I have built dykes, pumped water and protected the neighboring land from flooding. I have never asked for any help from the neighbors to defray some of the cost. I'm asking you to pay $4000 for the year 1970 and $4000 for the year 1971 making a total of $8000 due at this time. Your cooperation in helping with the interest cost on building these dykes will be very much appreciated."

When payment was not made, Gumz, on April 17, 1972, at the northeast corner of his land, put up a new dike running diagonally from the Vessley to the Lemke and then dug a channel immediately to the northeast of this dike connecting the Vessley and Lemke ditches and bypassing the dam and pumps used to control floodwater backing into the Vessley. As a result, the lands east of the Vessley were flooded.

The adjoining landowners filed suit for an injunction and damages and Gumz counterclaimed for an injunction to require removal of the adjoining landowners' alleged obstructions in the ditch and damages. Appended to the counterclaim was Gumz' general request for trial by jury.

The threshold error assigned by Gumz is the failure of the court to grant his request for jury trial.

In *Hiatt* v. *Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834, the court considered the application of Indiana Rules of Procedure, Trial Rules 38 and 39, to a claim stated in one pleading paragraph which arguably disclosed the existence of both legal and equitable issues. The court held that despite some of the language contained in the rules, the historical procedure perpetuated by TR. 38(A) required that in such instances the right to jury trial was to be properly determined

by reference to the essential character and nature of the claim for relief sought.

Gumz' counterclaim, as was the claim in *Hiatt,* was presented in a single pleading paragraph.[1] It first set forth the interests of the parties and the assertion that the adjoining landowners had erected the obstruction at the intersection of the Vessley and Lemke Ditches. It further set forth that this had the effect of forcing water in, over and through Gumz' property, thus destroying drainage thereto, to the detriment of Gumz in the amount of $50,000 in 1972; that to protect his property, Gumz was required to build and enlarge his system of private dikes and drains, the cost and maintenance of which was $100,000; that the increased water pressure on Gumz' dikes would cause them to break; and that the obstruction also caused silt deposits in the western portion of the Lemke causing Gumz to periodically clean that portion at a cost of $5000. The counterclaim then pleaded that Gumz had no adequate remedy at law; that without injunctive relief Gumz would be irreparably damaged; that there would be "numerous (sic) and interminable litigation"; and that Gumz' injury was not susceptible of adequate compensation in damages. Prayer was then made for mandatory injunction, for prohibitory injunction, for $155,000 damages, and for costs and attorney's fees. The essential character of the counterclaim was equitable. While Gumz' claim for relief asserted that maintenance of the obstruction constituted an appropriation of the legal drains for the adjoining landowners' private use, it was this very activity that allegedly caused irreparable injury incapable of being assessed in terms of money damages.

Gumz, however, attempts to avoid application of *Hiatt* by asserting this essential nature of his claim was altered by the pre-trial order entered by the court. We disagree.

In *Hiatt* the court expressly considered and rejected interpretation of Rules TR. 38 and 39 to require jury trial

---

1. It has been contended by no one that plaintiffs' complaint, as supplemented, is not in equity.

LAW LIBRARY

JAN 17 1979

University of Iowa

on *issues* that may arise within the claim, where the claim itself is not triable by jury as a matter of right under TR. 38(A).

Here that portion of the pre-trial order setting forth contentions of the parties discloses that a portion of the damages claimed by Gumz was based upon a theory of trespass. However, the pre-trial order expressly stated that the case was at issue upon the complaint and counterclaim, that no motions were pending, and that no amendments to the pleadings were contemplated. Under such circumstances we conclude the essential character of the claims, for purposes of determining the right to jury trial, was not altered by the pre-trial order's recognition of merely an *issue* of damages for trespass.

Gumz' second contention is that the judgment awarding an injunction and nominal damages to the adjoining landowners is not sustained by the evidence and is contrary to law.

The essence of Gumz' position is that while he did make cuts and dig a trench, the cuts were made only in the dikes he had erected and did not extend below the surface level of the surrounding lands. Therefore, the cuts did not disturb what should properly, he contends, be considered the ditch bank. The "trench" was dug entirely on his own land. He therefore urges that since he was merely altering conditions on his own property which had been artificially created, any harm to the adjoining landowners is *damnum absque injuria.*

There is in fact considerable confusion in the record as to whether the cuts were restricted to an elevation above the level of the surrounding terrain. In large part this may have occurred through the failure of witnesses, when testifying, to appreciate the suggested distinction. Thus, for instance, witness Edward Schultz, a Gumz employee, repeatedly referred to the area from the bottom of the ditch channel to the top of the dike simply as the ditch bank. Yet on cross examination, he made it clear that he was referring to an elevation

above ground level. Even so, there was substantial evidence of probative value from the testimony of other witnesses that Gumz' activities on April 17, 1972, included cutting into the banks and causing water to thus escape its confinement and flood the lands of the adjoining landowners.[2]

Therefore, when the standard of appellate review is applied, the evidence is sufficient and the decision is not contrary to law.

Gumz' second contention in urging that the decision was against the weight of the evidence and contrary to law is that, in any event, his actions were justified because they were necessitated by the obstruction in the ditch which was being illegally maintained by the adjoining landowners. As more fully discussed in that portion of our opinion dealing with the contention that the court erred in failing to grant the injunction requested by Gumz, we believe the evidence supported the trial court's determination that the obstruction did not create justification for Gumz' actions.

Apart from the evidentiary confusion as to whether the cuts were above or below the level of the surrounding terrain, the injunction was properly entered. Under Gumz' theory that only dikes were cut, the water that flooded the adjoining lands would otherwise have been retained. The dikes, together with the obstruction, created an impoundment of the flood waters that emanated from the Kankakee River.

Review of our decisional law discloses that a landowner may not intentionally alter the course and flow of waters or, having impounded them, permit them to escape, thereby causing damage to his neighbors, without liability.

Thus, although an owner is entitled to natural drainage of his surface waters, he may not collect and discharge

2. Gumz himself admitted cutting the north bank of the Lemke and that this caused water to escape over the adjoining area. He testified that there was no dike on the north bank where the cut was made. Also, in answer to requested admissions, Gumz admitted that by his employees, he cut the south "bank" of the Lemke and the west "bank" of the Vessley.

such water upon his lower neighbors in volume. *Weideroder* v. *Mace* (1916), 184 Ind. 242, 111 N.E. 5; *Weddell* v. *Hapner* (1890), 124 Ind. 315, 24 N.E. 368; *Smith* v. *Atkinson* (1962), 133 Ind. App. 430, 180 N.E. 2d 542.

Where water is, or has become part of a natural watercourse, an owner may not divert the channel and cast the water upon his neighbor without liability. *Tichenor* v. *Witherspoon* (1927), 87 Ind. App. 79, 158 N.E. 514; *Rarey* v. *Lee* (1896), 16 Ind. App. 121, 44 N.E. 318.

The same is true where the owner changes the course of waters in public ditches so as to substantially increase the volume of water in one or cause it to fill with sand, thereby endangering lower lands. *Schleman* v. *Leeka* (1921), 78 Ind. App. 594, 131 N.E. 527. See, also, *Gwinn* v. *Myers* (1955), 234 Ind. 560, 129 N.E.2d 225.

We have, also, long accepted that an owner who creates an artificial impoundment of water on his land will be liable to his neighbor if he permits it to escape and the neighbor is thereby injured. *Niagara Oil Co.* v. *Ogle* (1912), 177 Ind. 292, 98 N.E. 60; *Central Indiana Coal Co.* v. *Goodman* (1942), 111 Ind. App. 480, 39 N.E.2d 484.

Here, Gumz had created, through his system of dikes, an impoundment of the flood waters from the Kankakee. Over many years he had permitted the adjoining landowners to rely upon his dikes and the obstruction in their determination of the measures and activities they would take to protect and farm their own lands. He then, for the admitted purpose of enforcing a demand that the neighbors recompense him for what he had done, at a time when the flood waters were present, created a by-pass ditch around the obstruction after first putting up a dike to protect his own land, so that lands of the adjoining landowners would be flooded by the volume of water thus discharged from the Lemke into the Vessley. This he had no right to do, whether his conduct amounted

to releasing impounded waters or to changing the flow and volume of the watercourse provided by the ditches.

The court properly found that the adjoining landowners did not have an adequate remedy at law since there was no legal remedy to provide as complete, practical, efficient and adequate a remedy as that obtained by injunction. *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165, 70 N.E. 146; *Fisher* v. *Carey* (1918), 67 Ind. App. 438, 119 N.E. 376. The court did not abuse its discretion in granting the injunction.

As the injunction was properly granted, there was no error in the court's award of nominal damages to the plaintiffs. *Brauns* v. *Glesige* (1891), 130 Ind. 167, 29 N.E. 1061.

Gumz asserts that the decision denying his request for injunction and damages was contrary to the evidence and contrary to law. This assignment properly presents only the question of whether the decision was contrary to law since Gumz had the burden of proof on these issues, and there was a negative judgment. The judgment must stand unless the trial court's conclusion was contrary to the sole reasonable conclusion to be drawn from the evidence. *Houser* v. *Bd. of Commr's* (1969), 252 Ind. 312, 247 N.E.2d 675.

The evidence was ample to permit the conclusion that Gumz was not entitled to relief. In addition to evidence that he maintained similar ditch obstructions elsewhere, Gumz admitted that he had never objected to the dam and pumps prior to 1972. He admitted that the pump had been there since 1956, and Ora Bechert testified that the pump had been first installed in 1950. Gumz admitted that he had previously actively participated in the maintenance of the pumping system. Other testimony indicated he had made contributions to a fund to maintain the pump in the years 1967 through 1970 and that in 1970 he had provided the motor to operate the pump. From this evidence, the court could conclude that he acquiesced in maintenance of the obstruction and was

not only precluded from equitable relief but failed to establish an actionable trespass.[3]

Finally, Gumz has objected to six findings made by the court, to the failure of the court to make five suggested findings, and to four of the conclusions of law that were entered. We have carefully reviewed these allegations and find that they are merely supportive of Gumz' theories which we have already answered, or are not essential to the results reached. It would therefore not be worthwhile to burden this opinion with their individual treatment.

The judgment is affirmed.

Staton, P.J. and Lowdermilk, J., concur.

---

3. Apparently, none of the legislation dealing with flood control and conservancy districts was applicable in this case, nor were the provisions of The Indiana Drainage Code, IC 1971, 19-4-1, Ind. Ann. Stat. § 27-2001, *et seq.* (Burns 1970 Replacement) invoked. Thus, as we have determined the claims were in equity, and as an equitable basis for denying the relief requested by Gumz was present, it would serve no valid purpose to discuss these statutory provisions.