**Casimer ROUNDS, Jr. and Mary C. Rounds, Plaintiffs-Appellants,**

v.

**Earl W. HOELSCHER and Nola L. Hoelscher, Defendants-Appellees.**

No. 3–580A138.

Court of Appeals of Indiana, Third District.

Dec. 10, 1981.

Paul B. Kusbach, South Bend, for plaintiffs-appellants.

Robert M. Parker, John C. Hamilton, Parker, Brunner & Hamilton, South Bend, for defendants-appellees.

GARRARD, Judge.

Casimer Rounds, Jr. and Mary C. Rounds (Rounds) appeal a negative judgment from an action in which they sought both damages and injunctive relief from Earl W. Hoelscher and Nola L. Hoelscher (Hoelscher). We affirm.

The relevant facts disclose that Rounds and Hoelscher were owners of adjacent real estate in Clay Township, St. Joseph County, Indiana. The Hoelscher lot is bounded on the west by U.S. Highway 31 and on the north by Greenacre Street. The Rounds' lot is immediately east of the Hoelschers' on Greenacre Street. The lowest point in the area is in the rear of the Rounds' lot and surface water drains to it from distances between 200 and 500 feet in all directions. This problem is exacerbated by the drainage of U.S. 31 which, during heavy rains, channels surface water north to Greenacre Street where it flows east to a swale between the lots created by an old culvert under Greenacre Street, and then south to the rear of the lots. Until the Hoelschers filled their lot, the back portions of each lot were essentially level and when rain was substantial a pond formed covering the back of both lots to a depth of more than a foot. Simply put, the two lots were in a natural retention area from which there was no drainage.

The Hoelschers purchased their lot in 1963 and immediately began to experience water problems. After unsuccessfully seeking relief from governmental agencies, they consulted a lawyer, had a survey made, and began to build up their lot with fill dirt in 1966. They raised their lot to the approximate level of Greenacre Street, installing a concrete curb along the street. Where the two lots joined, the fill was sloped gradually to the original grade and flag stones were cemented into the bank. This left the depressed area or swale between the two lots at the original ground level. After the fill was completed by the Hoelschers, except for the heaviest of rains, the water no longer came across their lot. It then went almost entirely around them on U.S. 31 and Greenacre Street to the swale between the lots. The Hoelschers no longer experienced the standing water.

The Rounds purchased their lot and home in 1973. In December of that year after a heavy rain, water invaded their basement to a depth of one inch. They experienced no further water in their home during 1974 and 1975, although the flooding of the rear of their lot remained a problem. In the fall of 1975 the Rounds built a basement addition which extended from their home to within a few feet of the swale on their western boundary with the Hoelschers. In March of 1976, during heavy rains, surface water flowed against the new basement wall collapsing it and flooding the entire basement to a depth of seven feet. The Rounds were forced from their home while the basement was pumped out by the township fire department. In June of 1976, after another heavy rain, the basement flooded again and the Rounds were again forced to move. The Health Department advised them that the water was contaminated.

The Veterans Administration then foreclosed its mortgage when the Rounds were unable to continue their mortgage payments. A deficiency judgment of $7,200 resulted. The Rounds also lost personal property which was in the basement when it flooded.

The Rounds then initiated this lawsuit for an injunction and damages, asserting that the Hoelschers were not entitled, as a matter of law, to channel surface waters by raising their lot three to four feet or to shift entirely to the Rounds the burden, previously shared equally, of retaining surface water in their back yards. On December 12, 1979, judgment was entered against the Rounds on their claim. From that adverse judgment the Rounds have perfected this appeal.

On appeal the Rounds assert that the trial court incorrectly applied the common enemy doctrine concerning surface waters and that the Hoelschers created an improper diversion of surface water under Indiana law. We shall address these issues as one.

▇ The law of surface water[1] in the United States has evolved from two old and contradictory rules, the civil law rule and the common enemy rule.[2] The civil law rule declares that, as between upper and lower property owners, the upper owner has an easement to have surface water flow naturally from his land onto the land of the lower owner and the lower owner has no right to obstruct that flow. 93 C.J.S. *Waters* § 114. The common enemy rule reaches the opposite result as it states that surface water is a common enemy which every owner may fight as he deems best, regardless of its effect on neighboring property owners. Under it the upper owner has

---

1. We find this definition of surface water in *Capes v. Barger* (1953), 123 Ind.App. 212, 109 N.E.2d 725, 726:

   "Water from falling rains or melting snows which is diffused over the surface of the ground or which temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel, is surface water."

2. The latter is also referred to as the common law rule and on the basis of that characterization has sometimes been found controlling. The term, however, appears to be a misnomer. *See* Maloney and Plager, *Diffused Surface Water: Scourge or Bounty?*, 8 Natural Resources Journal 74 (1968); 59 A.L.R.2d 424, n.11; and 1 Clark, *Waters and Water Rights*, § 52.1(A), n.10.

no natural servitude for drainage across the lower owner's property and the lower owner may take measures to protect his property although the result is to throw water back upon the upper owner. 93 C.J.S. *Waters* § 114. Both rules have been modified by the courts endeavoring to avoid harsh and unreasonable results.

The civil law rule has been criticized as preventing improvement to land, and courts have shown a tendency to modify the rule in some respects so as to permit a reasonable use of land. 59 A.L.R.2d 431. It has been recognized that one right of ownership is the control of surface waters and that so long as no unreasonable or negligent act is committed by an upper land owner, the lower owner has no cause of action for incidental damage or a somewhat increased burden. 59 A.L.R.2d 432, citing *Ratcliffe v. Indian Hill Acres, Inc.* (1952), 93 Ohio App. 231, 113 N.E.2d 30. It has also been stated that the right to modify natural drainage must be determined in light of all the circumstances including relative benefit to the upper land and injury to the lower. 59 A.L.R.2d 432, citing *Vinson v. Turner* (1949), 252 Ala. 271, 40 So.2d 863. A more specific exception to the civil law rule has been in its application to urban property. Recognizing that alterations to the surface of land were essential to enjoyment of urban property, courts have applied the common enemy or reasonable use rules to those situations. 59 A.L.R.2d 434 citing *Lunsford v. Stewart* (1953), 95 Ohio App. 383, 120 N.E.2d 136.

Likewise the common enemy rule has been modified so as to involve concepts of negligence and reasonable use. In its strict form it has been criticized as encouraging hydraulic contests in which might makes right and a breach of the peace is threatened. Maloney and Plager, *Diffused Surface Water, supra,* at 78. Courts therefore have said that although surface water is a common enemy one cannot make his estate more valuable at the expense of his neighbor and that in fending off surface waters one must do no unnecessary harm to others nor act negligently. 59 A.L.R.2d 426, citing *Livingston v. McDonald* (1866), 21 Iowa 160; *Turner v. Smith* (1950), 217 Ark. 441, 231 S.W.2d 110; and *Elsasser v. Szymanski* (1956), 163 Neb. 65, 77 N.W.2d 815. Other courts have held that even under the common enemy rule it is the duty of an owner to drain his land to a natural water course, if one is reasonably accessible, and that one was not justified in improving his own property so as to seriously interfere with adjacent properties. Maloney and Plager, *Diffused Surface Water, supra,* citing *Sheehan v. Flynn* (1894), 59 Minn. 436, 61 N.W. 462; and *Freudenstein v. Heine* (1878), 6 Mo.App. 287.

The effect of these modifications has been to draw the two rules closer together so that their application to a given set of facts is more apt to reach the same result as if the more modern rule of reasonable use were applied. 59 A.L.R.2d 437; Maloney and Plager, *Diffused Surface Water, supra.* Maloney and Plager point out:

"For example, the civil-law owner may *never* drain his land *except* by following the natural drainage, but the common-enemy owner may *always* drain his land except that he may not use artificial channels. The civil-law owner may *never* obstruct the natural flow of surface waters *unless* he acts reasonably, while the common-enemy owner may always obstruct the flow *if* he acts reasonably." (emphasis in original)

8 *Natural Resources Journal* at 79.

■ The rule of reasonable use has evolved from the modified versions of both the common enemy and the civil law rule. This rule of reasonable use attempts to determine the rights of the parties by an assessment of all relevant factors. Its advantage is that by applying tort principles of liability,[3] as compared with the property

**3.** The Restatement (Second) of Torts § 833 (1977) provides:

"An invasion of one's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water may constitute a nuisance; ... By interference with the flow of surface waters is meant an obstruction, diversion or altera-

law notions of servitude (civil law rule) or absolute ownership (common enemy rule), it allows for flexibility in the cases, which in this area are extremely fact sensitive. Its disadvantage is that some predictability may be lost compared with the simpler common enemy or civil law rules. In essence the rule of reasonable use says that every man has the right to reasonably use his own property but he must do so in a way that will not unnecessarily cause injury to another. 59 A.L.R.2d 435; Maloney and Plager, *Diffused Surface Water, supra,* at 79, 80; 1 Clark, *Waters and Water Rights* § 52.1(A) (1967).

The Indiana case law on surface water reveals that our jurisdiction has followed both the civil law rule and the common enemy rule in their strict forms. In Indiana the civil law rule was first enunciated in 1880:

"It may be stated as a general principle, that, by civil law, where the situation of two adjoining fields is such that the water falling or collected by melting snows, and the like, upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land if desired by the owner of the upper field. But the latter can not, by artificial trenches, or otherwise, cause the natural mode of its being discharged, to be changed to the injury of the lower field, as by conducting it by new channels in unusual quantities on to particular parts of the lower field."

*Templeton v. Voshloe* (1880), 72 Ind. 134, 136.

In 1962 we find the rule set forth as the court says:

"There is a divergency of opinion as to the rules of law applicable to this type of case. . . . The rule which governs in Indiana is stated in 29 I.L.E. *Water* § 53, as follows:

'While the owner of upper or higher land may make such drains on his land as are required by good husbandry and the proper improvement of the surface of the ground, and such as may be discharged into natural channels without inflicting unnecessary injury on the adjacent owner, the right of the upper landowner to discharge surface water on the lower land is a right of flowage only in the natural ways and in natural quantities, and he may not alter the natural conditions so as to change the course of the water, or concentrate it at a particular point, or by artificial means increase its volume. Accordingly, an upper landowner may not, by a

tion of the natural or normal flow of surface waters in the particular place where the interference occurs. When one person drains or cultivates his land, grades it or builds roads, structures or embankments upon it, he usually interferes with the flow of surface waters upon or across it; and this interference often causes harm to a neighbor in the use and enjoyment of his land. That harm may arise from the backing up of water on the neighbor's land or from an increase in the flow of the water or from a change· in its direction or velocity. It may be intentional or unintentional. (See § 825). Whatever the particular situation may be, the same general rules apply in determining liability for the invasion of the neighbor's interest in the use and enjoyment of his land as apply when an invasion results through vibrations, noise, smoke or the pollution of waters. In all these cases the type of interest invaded is the same, the only difference being in the manner in which the invasion is caused and in the type of conduct that causes it. When the invasion is not· intentional, the liability of the person harmfully interfering with the flow of surface waters depends upon whether his conduct has been negligent, reckless or abnormally dangerous. . . . When the invasion of a person's interest in the use and enjoyment of land by another's interference with the flow of surface waters is intentional, the determination of its reasonableness or unreasonableness is ordinarily a question for the trier of fact in each case in accordance with the rules stated in §§ 826–831. Whether the utility of the conduct that causes the invasion outweighs the gravity of the harm caused ordinarily depends upon the circumstances of each particular case. There are, however, some types of situations in which the utility of the actor's conduct is so high that in the absence of exceptional circumstances the invasion that it causes will not be unreasonable. Thus, for example, an invasion that results from an interference with surface waters caused by ordinary plowing and the cultivation of land or by the erection of buildings in an urban locality is usually not actionable."

channel, sewer, ditch, or drain, collect or concentrate the surface water and cast it on the lands of the lower proprietor, either intentionally or negligently, without incurring liability for the damages caused thereby.'"

*Smith et ux v. Atkinson et al* (1962), 133 Ind.App. 430, 433, 180 N.E.2d 542.

Again and more recently we find this:

"Thus, although an owner is entitled to natural drainage of his surface waters, he may not collect and discharge such water upon his lower neighbors in volume. *Weideroder v. Mace* (1916), 184 Ind. 242, 111 N.E. 5; *Weddell v. Hapner* (1890), ·124 Ind. 315, 24 N.E. 368; *Smith v. Atkinson* (1962), 133 Ind.App. 430, 180 N.E.2d 542.

*Gumz v. Bejes* (1975), 163 Ind.App. 55, 61–2, 321 N.E.2d 851.

We also find Indiana cases that set forth the common enemy rule:

"The parties are agreed that the appellees, being owners of the lower land, have a legal right to dam against surface water draining off the appellants' land and are not responsible for damages by reason of the accumulation of water above the obstruction. *Ramsey v. Ketcham* (1920), 73 Ind.App. 200, 127 N.E. 204; *Watts v. Evansville, etc., R. Co.* (1921), 191 Ind. 27, 129 N.E. 315."

*Capes v. Barger* (1952), 123 Ind.App. 212, 214, 109 N.E.2d 725.

In a 1955 case we find this:

"The law is well-settled that the owner of land is not liable for damages to lands of another occasioned by the surface water flowing therefrom as it naturally flows over the surface of the ground, and that a lower proprietor may erect levees and dams of reasonable height to prevent such surface waters from entering upon his land, and he cannot be held liable for damages because such obstruction causes such surface water to flow on the lands of another, unless it changes a natural or prescriptive water course or channel. *Watts v. Evansville, etc. R. Co.* (1921), 191 Ind. 27, 129 N.E. 315; *Cairo etc., R. Co. v. Stevens* (1881), 73 Ind. 278, 38 Am.Rep.

139; *Clay v. Pittsburgh, etc. R. Co.* (1905), 164 Ind. 439, 73 N.E. 904."

*Thompson v. Dyar* (1955), 126 Ind.App. 70, 74, 130 N.E.2d 52.

Most recently in *Argyelan v. Haviland* (1981), Ind.App., 418 N.E.2d 569, 571, the court stated:

"Indiana follows the 'common enemy rule' governing surface waters which has been defined thusly:

'[A] lower property owner may dam against such water to prevent it from entering onto his land and ... cannot be held liable for damages resulting from the accumulation of water above the obstruction or because such obstruction causes the water to flow onto the land of another. *Watts v. Evansville, Mt. Carmel and Northern Railway Co.* (1921), 191 Ind. 27, 129 N.E. 315; *Gwinn v. Myers* (1955), 234 Ind. 560, 129 N.E.2d 225; *Capes v. Barger* (1953), 123 Ind.App. 212, 109 N.E.2d 725; *Thompson v. Dyar* (1955), 126 Ind. App. 70, 130 N.E.2d 52; *Lowe v. Loge Realty Co., Inc.* (1966), 138 Ind.App. 434, 214 N.E.2d 400. *The only limitation outlined in the above cases is that a landowner may not collect surface water into a body and then discharge it on to another's land.'*

*Cloverleaf Farms, Inc. v. Surratt* (1976), 169 Ind.App. 554, 349 N.E.2d 731, 732 (emphasis added). *Accord, Gene B. Glick Co., Inc. v. Marion Construction Corp.* (1975), 165 Ind.App. 72, 331 N.E.2d 26, reh. denied 333 N.E.2d 140."

The contradictions in these two lines of cases are apparent. Their co-existence appears to depend largely upon whether the upper or lower owner is the defendant before the court. Under the line of cases following the civil law rule the upper owner is "entitled to natural drainage of his surface waters," *Gumz, supra,* yet under the common enemy line of cases we find that the lower owner "may dam against such water to prevent it from entering onto his land." *Argyelan, supra.*

It also appears that some Indiana cases have modified the common enemy rule to mitigate the harsh results which arise from its strict application.

"It is true that the courts of our state have adopted the 'common law' rule or 'common enemy' doctrine, and that no natural easement or servitude exists in favor of the higher land owner for the drainage of surface-water, and that the proprietor of the lower land may turn surface-water back from his own lands where he commits no act inconsistent with the due exercise of dominion on his own soil. *Taylor, Admr. v. Fickas* (1878), 64 Ind. 167; *Cairo etc., R. Co. v. Stevens* (1881), 73 Ind. 278.

However, our courts have applied this rule with certain restrictions and modifications."

*Newton v. Lyons* (1950), 120 Ind.App. 465, 470, 90 N.E.2d 917.

In that case, since the lower owner had entered upon a public highway to block a culvert causing water to artifically back up, he was found to have committed acts inconsistent with the due exercise of dominion over his own land. *Newton, supra.* Other cases have made the civil law rule as it applies to upper owners an exception to the common enemy rule.

"Surface water, it has been said, is a common enemy, which the land-owner may fight off his land, as best he may. But while there is something of truth in the statement, there is, nevertheless, much of error. It is not true, in law, that a landowner, or a municipal corporation, may collect surface water in an artificial channel, and pour it upon another's land. Whatever doubt may have once existed upon this subject, none longer exists. It is now well settled that the right to fight off surface water does not authorize it to be collected in a volume and cast upon the land of another."

*Patoka Township et al v. Hopkins* (1891), 131 Ind. 142, 143, 30 N.E. 896.

The two rules and their modifications have been a long standing source of confusion when applied to specific facts.

"One hundred years ago in a case involving surface water, the Indiana Supreme Court observed:

'It is difficult to invent a formula for the statement of a rule of law which will accurately express the rule in its application to varying circumstances; and it may be that there is some verbal inconsistency in the formulas quoted from these opinions of this court, but when applied to the subject-matter of each there is no inconsistency of principle involved or expressed.'

*Cairo & V. R. Company v. Stevens* (1881), 73 Ind. 278, 283.

We agree that 'verbal inconsistencies' may obscure the true parameters of a rule of law, and the intervening century of case law on the subject of surface waters emphasizes the accuracy of the above quotation. As the court did in *Cairo, supra,* it is important to pay heed to the exact circumstances of the factual situations presented in the case law rather than the sometimes imprecise terminology used."

*Argyelan, supra,* 418 N.E.2d at 572.

This observation is not unique to our jurisdiction. In *Brumley v. Dorner* (1919), 78 Fla. 495, 83 So. 912, the court, after discussing the civil law and common enemy rules and their modifications, observed that the cases almost unanimously concluded that each case must stand on its own facts.

We conclude that continued use of the competing formulas expressed in the Indiana cases may often inhibit a clear factual and legal analysis since the courts looking at the facts of each situation often determine a reasonable use and then attempt to fit the facts into one or another of the existing rules, which define the appropriate result. In the case before us the trial court, in order to reach its result, applied the common enemy doctrine to the facts in order to define the rights of Hoelscher. However, if we were to pursue the use of both "rules" it must be noticed that, especially in an urban situation, a lot owner may be free from liability to an upper owner for damming back surface waters but may become

liable to a lower owner for unnatural channeling of the water when it runs around the dam. Thus *rights and liabilities for the same act* may be defined upon the basis of each owner's posture on the hill rather than in terms of the reasonableness of the owner's actions in light of all the circumstances.

Another problem may arise when the facts of a situation are forced into an exposition of the rule that results in the real import of the evidence being ignored. In *Argyelan, supra*, the common enemy doctrine and its exception for collected channeled waters were strictly applied to the facts and since no water was found to have been collected, discharged, or concentrated specifically, the court found no liability even though, as Judge Sullivan points out in his dissent, the trial court had found the water came over the wall like a waterfall and created a flooding problem which had never existed before.

■ The rules above cited are premised on landowners being upper and lower neighbors, yet in the case before us we find neighboring land owners who live in a natural depression and who were essentially level with each other until filling was done. Additionally this case presents the situation criticized by the commentators concerning the common enemy rule. Its strict application would result in a hydraulic contest in which each owner would become the lower owner vis-a-vis the owner of the last filled lot. He would then have an absolute right to build up his lot and cast the waters back upon his neighbor. We agree that surface water is a common enemy but we also recognize it is deserving of a common solution and that an owner has no absolute right to benefit his own land by shifting his burden to his neighbor under the protection of a strict and antiquated rule of law.

■ The rules controlling surface water in Indiana are contradictory. Their strict application can reach harsh results necessitating exceptions. Since the formulas derived often interfere with the court's ability to resolve unique factual situations, and since, as in other jurisdictions, the exceptions have brought the two rules closer to the modern rule of reasonable use, we find it both prudent and necessary to restate the rules as to a landowner's rights to control surface waters as one of reasonable use. Therefore we hold that every landowner has the right to reasonably use his property but that he must use his own property so as not to cause unnecessary injury to another in light of all the surrounding circumstances. We further find that these factors are relevant to the determination of reasonableness:

1. The improvements being the cause in fact of the injury.

2. The nature and importance of the improvements.

3. The relative value of the harm compared to the improvements.

4. The foreseeability or remoteness of the injury.

5. The extent of the interference with the surface water.

6. The availability of mutual solutions to the water drainage problems.

7. The negligence or wilful misconduct by a party acting to control surface water.

This list is not intended to be exhaustive. The rules previously enunciated by our courts can be, where appropriate, relevant factors in determining the rights and responsibilities of landowners in attempting to control surface water.

■ Under a rule of reasonable use, as with other claims in tort, the burden of proof is upon the party seeking redress to establish that the defendant's actions were not reasonable under the circumstances.

In the case before us the trial court expressly found from the evidence introduced at trial that Hoelschers unsuccessfully attempted to secure relief from governmental agencies for the water problem on their lot, and then built up the level of the lot with fill dirt in 1966. While Rounds had some water come into their basement after a rainstorm in December 1973, they experienced no such problems in 1974 and 1975. In 1975 Rounds excavated for their base-

ment addition to within four feet of the concrete curb erected by their predecessors in title against the water. In 1976, after heavy rains, surface water flowing off Greenacre Street flowed on both sides of the curb and collapsed their new basement wall. The court also found that the water which damaged Rounds' home did not originate on Hoelschers' land; that in filling their lot Hoelschers did not increase the flow of surface water in any way or cause it to be collected on their property and discharged onto Rounds'. The evidence supports these findings.

■ The court properly determined that the Hoelschers were not liable for the damages which ensued when Rounds elected to expand their basement as they did nearly ten years after Hoelschers had filled their own lot. This result is sustained under the reasonable use theory.

The judgment is therefore affirmed.

STATON, J., concurs.

HOFFMAN, P. J., concurs in result and files separate opinion.

HOFFMAN, Presiding Judge, concurring in result.

I concur in the result reached by the majority. I cannot agree however with the abandonment of the common enemy rule in favor of the reasonable use rule.

The Indiana version of the common enemy rule is summarized in the recent case of *Argyelan v. Haviland* (1981), Ind.App., 418 N.E.2d 569, at 571 (transfer pending) as follows:

" '[A] lower property owner may dam against such water to prevent it from entering onto his land and . . . cannot be held liable for damages resulting from the accumulation of water above the obstruction or because such obstruction causes the water to flow onto the land of another. *Watts v. Evansville, Mt. Carmel and Northern Railway Co.* (1921), 191 Ind. 27, 129 N.E. 315; *Gwinn v. Myers* (1955), 234 Ind. 560, 129 N.E.2d 225; *Capes v. Barger* (1953), 123 Ind.App. 212, 109 N.E.2d 725; *Thompson v. Dyar* (1955), 126 Ind.App. 70, 130 N.E.2d 52; *Lowe v. Loge Realty Co., Inc.* (1966), 138 Ind.App. 434, 214 N.E.2d 400. *The only limitation outlined in the above cases is that a landowner may not collect surface water into a body and then discharge it on to another's land.*' " Citing *Cloverleaf Farms, Inc. v. Surratt* (1976), 169 Ind. App. 554, at 555, 349 N.E.2d 731, at 732 (original emphasis). *Accord, Gene B. Glick Co., Inc. v. Marion Constructon Corp.* (1975), 165 Ind.App. 72, 331 N.E.2d 26, *reh. denied* 333 N.E.2d 140.

The common enemy rule applies in cases where a lower property owner creates an obstruction on his land to prevent surface water from flowing onto his property. The common enemy rule does not apply in cases where a natural watercourse is obstructed, or interfered with, to the damage of another. *See Lowe v. Loge Realty Co., Inc.* (1966), 138 Ind.App. 434, 214 N.E.2d 400; *Thompson et al. v. Dyar* (1955), 126 Ind. App. 70, 130 N.E.2d 52. Contrary to the majority's assertion, Indiana has not followed both the civil law rule and common enemy rule with respect to surface waters. In all such cases the common enemy rule has been applied.

According to the majority's definition of the civil law rule, the lower landowner has no right to obstruct the natural flow of water from an upper parcel of land. Although the majority declares that this rule has been followed in Indiana, it fails to cite a single case in which an Indiana court has held that a lower landowner may not obstruct the flow of *surface* water from the property of an upper landowner.

In *Templeton v. Voshloe* (1880), 72 Ind. 134, the majority finds the first enunciation of the civil law rule in Indiana. The issue in *Templeton* was whether Voshloe could lawfully cut openings in a ridge in order to allow surface water to flow across Templeton's property. The Court referred to a legal treatise in deciding the issue.

"In referring to the subject under discussion, Washburn on Easements, marginal page 353, says:

'Before proceeding to consider the law as to water percolating through the earth, beneath its surface, it is necessary to refer to a few principles which seem now to be pretty well settled as to the respective rights of adjacent land-owners, in respect to waters which fall in rain, or are in any way found upon the surface, but not embraced under the head of streams or watercourses, nor constituting permanent bodies of water, like ponds, lakes, and the like. It may be stated as a general principle, that, by civil law, where the situation of two adjoining fields is such that the water falling or collected by melting snows, and the like, upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land if desired by the owner of the upper field. But the latter can not, by artificial trenches, or otherwise, cause the natural mode of its being discharged, to be changed to the injury of the lower field, as by conducting it by new channels in unusual quantities on to particular parts of the lower field.' "

72 Ind. at 136.

The narrow holding of the Court is as follows:

"The principle recognized by the text thus quoted from is well illustrated and sustained by several leading cases referred to, and commented upon, by the learned author.

"From these and other decided cases, we deduce the doctrine that the owner of the upper field may not construct drains or excavations so as to form new channels on to the lower field, nor can he collect the water of several channels and discharge it on the lower field so as to increase the wash upon the same. *The right of the owner of the upper field to make drains on his own land is restricted to such as are required by good husbandry and the proper improvement of the surface of the ground, and as may be discharged into natural channels, without inflicting palpable and unnecessary injury on the lower field.*" (Emphasis added.)

*Id.* at 136–137.

The right of the lower landowner to obstruct the flow of surface water was not at issue. The Court specifically held:

"As to where, and under what circumstances, the owner of the lower field may obstruct or direct the flow of surface water which naturally descends upon his land, we need not now inquire, as that question is in no way involved in the proper decision of this cause."

*Id.* at 137.

The common enemy rule was not applicable to this case. It is therefore clear that the Court in *Templeton* did not choose to apply the civil law rule instead of the common enemy rule.

The issue in *Smith et ux. v. Atkinson et al.* (1962), 133 Ind.App. 430, 180 N.E.2d 542 was whether an upper landowner had changed the nature of his land so as to collect a substantial amount of water and expel it into a watercourse which ran across the lower land. Water from the upper parcel was being discharged into a ditch which eventually ran across the lower parcel. Once the water entered the ditch, it was no longer surface water. *See Capes v. Barger* (1953), 123 Ind.App. 212, 109 N.E.2d 725. The case did not involve the lower landowner obstructing the flow of surface water. The common enemy rule was not applicable.

Finally, a review of *Gumz v. Bejes et al.* (1975), 163 Ind.App. 55, 321 N.E.2d 851 reveals that it was concerned with both the intentional altering of the course and flow of waters and the impoundment and later release of waters. The case apparently did not concern surface waters, but rather water that was channeled through ditches. Again the common enemy rule did not apply.

The present case involves a landowner who raises his property in order to obstruct the flow of surface water. The effect was to force the surface water onto the land of another. Indiana courts have consistently stated that where surface water is involved, the lower landowner may obstruct the flow of surface water without incurring liability

for damage that the water does to the land of another.

See, e. g., Gwinn v. Myers et al. (1955), 234 Ind. 560, 129 N.E.2d 225; Watts v. Evansville, etc., R. Co. (1921), 191 Ind. 27, 129 N.E. 315; Cleveland, etc., R. Co. v. Smith (1912), 177 Ind. 524, 97 N.E. 164; New Jersey, etc., R. Co. v. Tutt (1907), 168 Ind. 205, 80 N.E. 420; Clay v. Pittsburgh, etc., R. Co. (1905), 164 Ind. 439, 73 N.E. 904; The Cairo and Vincennes Railroad Company v. Houry (1881), 77 Ind. 364; Benthall v. Seifert (1881), 77 Ind. 302; Taylor, Administrator v. Fickas (1878), 64 Ind. 167; Argyelan v. Haviland (1981), Ind.App., 418 N.E.2d 569 (transfer pending); Cloverleaf Farms, Inc. v. Surratt (1976), 169 Ind.App. 554, 349 N.E.2d 731; Lowe v. Loge Realty Co., Inc. (1966), 138 Ind.App. 434, 214 N.E.2d 400; Thompson et al. v. Dyar (1955), 126 Ind.App. 70, 130 N.E.2d 52; Dunn v. Chicago, etc. R. Co. (1917), 63 Ind.App. 553, 114 N.E. 888; Evansville, etc. R. Co. v. Scott (1916), 67 Ind.App. 121, 114 N.E. 649; Vandalia R. Co. v. Yeager (1915), 60 Ind. App. 118, 110 N.E. 230; Gaskill v. Barnett (1913), 52 Ind.App. 654, 101 N.E. 40; Pittsburgh, etc., R. Co. v. Atkinson (1912), 51 Ind.App. 315, 97 N.E. 353; Hart v. Sigman (1903), 32 Ind.App. 227, 69 N.E. 262; New York, Chicago and St. Louis Railroad Co. v. Speelman et al. (1895), 12 Ind.App. 372, 40 N.E. 541; Jean v. The Pennsylvania Company (1894), 9 Ind.App. 56, 36 N.E. 159.

The majority apparently ignores stare decisis and the rule of precedent. While I would agree that the Court of Appeals must be conservatively responsive to accepted legal trends, I cannot agree that this Court should in any respect presume to be a barometer of public opinion or the weathervane of social change. It is for the Legislature to establish the procedures for such change. The function of the Court of Appeals is to interpret the law and lay down general guidelines by which the lawyers and the trial courts of the State may make determinations upon which they can depend. This function cannot be fulfilled by summarily abandoning the common enemy rule and replacing it with a rule of reasonableness. No longer will lawyers be able to advise their clients with any degree of certainty. What may be reasonable to one person in the use of his property may be unreasonable to an adjacent landowner. Neither of these opinions may comport with what a trial judge might declare is reasonable. The majority opinion does nothing more than muddy the waters in this area of the law.